**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **WPEM, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Case No. 2:18-cv-00156-JRG** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **SOTI INC.,** | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT SOTI INC.'S MOTION TO RECOVER ATTORNEYS' FEES**
**PURSUANT TO 35 U.S.C. § 285 AND BRIEF IN SUPPORT THEREOF**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................ 2

    A.    As WPEM Knew—the Asserted Patent Is Invalid Under 35 U.S.C. § 102(a)(1) in View of WPEM's Own Prior Patent Application. ............................ 2

    B.    *A Very Basic* Inquiry Would Have Revealed the Accused Technology Predates the Asserted Patent. ................................................................... 4

    C.    WPEM Knew or Should Have Known the Asserted Patent Is Unenforceable Due to Inequitable Conduct. ............................................. 5

    D.    Even a Cursory Investigation Would Have Revealed Incorrect Inventorship. .......................................................................................... 6

    E.    WPEM's Litigation Conduct Qualifies As Exceptional Under Section 285. ........ 6

III.   LEGAL STANDARD ...................................................................................... 8

IV.    ARGUMENT .................................................................................................. 9

    A.    SOTI Is the Prevailing Party in This Lawsuit. ........................................ 9

    B.    This Case Is Exceptional Under § 285 .................................................... 9

        1.    WPEM Violated Rule 11 by Suing SOTI—Which Is Exceptional Here. ........................................................................................ 10

            a.    WPEM Failed to Conduct an Adequate Pre-Suit Investigation Regarding the Accused Technology. ................... 11

            b.    WPEM Simply Ignored the '246 Publication. ........................... 11

            c.    WPEM Either Failed to Identify—Or Simply Ignored—that the Patent Office Was Not Made Aware of Key Prior Art During Prosecution. ................................................................. 12

            d.    WPEM Filed Suit Without Ascertaining Correct Inventorship. ............................................................................ 13

        2.    WPEM's Continued Assertion of Claims It Knew Were Meritless in an Effort to Extract Payment Also Renders This Case Exceptional. ...................................................................... 14

        3.    The Totality of the Circumstances In This Case Render It Exceptional. ...................................................................... 15

V.     ATTORNEYS' FEES SOUGHT & CONCLUSION .................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
   No. CV 12-256 (RMB/JS), 2015 WL 1197436 (D. Del. Mar. 13, 2015) ...............................14

*Classen Immunotherapies, Inc. v. Biogen Idec*,
   No. CIV. WDQ-04-2607, 2014 WL 2069653 (D. Md. May 14, 2014)...........................14, 15

*Computer Docking Station Corp. v. Dell, Inc.*,
   519 F.3d 1366 (Fed. Cir. 2008)...................................................................................9

*Eltech Sys. Corp. v. PPG Ind., Inc.*,
   903 F.2d 805 (Fed. Cir. 1990).............................................................................10, 11

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011)...........................................................................10, 15

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994).....................................................................................................9

*Highway Equip. Co. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006)...................................................................................9

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
   No. 1:12-CV-01138-SLR, 2016 WL 1267159 (D. Del. Mar. 31, 2016) ...................9

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
   76 F.3d 1178 (Fed. Cir. 1996).....................................................................................8

*Monolithic Power Systems, Inc. v. O2 Micro International, Ltd.*,
   726 F.3d 1359 (Fed. Cir. 2013).................................................................................15

*Novartis Corp. v. Webvention Holdings LLC*,
   No. CIV. CCB-11-3620, 2015 WL 3901639 (D. Md. June 22, 2015) ...................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545, 134 S. Ct. 1749 (2014)......................................................2, 8, 9, 12, 13, 14, 15

*Polaroid Corp. v. Eastman Kodak Co.*,
   789 F.2d 1556 (Fed. Cir. 1986)...................................................................................11

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
   360 F.3d 1295 (Fed. Cir. 2004)...................................................................................10

*SFA Sys., LLC v. Newegg Inc.*,
　793 F.3d 1344 (Fed. Cir. 2015)..................................................................................9

*SSL Servs., LLC v. Citrix Sys., Inc.*,
　769 F.3d 1073 (Fed. Cir. 2014)...............................................................................8, 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
　649 F.3d 1276 (Fed. Cir. 2011)................................................................................13

*Trover Grp., Inc. v. Dedicated Micros USA*,
　No. 2:13-CV-1047-WCB, 2015 WL 4910875 (E.D. Tex. Aug. 17, 2015)................8

*In re VerHoef*,
　888 F.3d 1362 (Fed. Cir. 2018)................................................................................14

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
　208 F.3d 981 (Fed. Cir. 2000).................................................................................10

**Rules and Statutes**

35 U.S.C. § 102.........................................................................................................12

35 U.S.C. § 102(a) ............................................................................................5, 6, 11

35 U.S.C. § 102(a)(1)....................................................................................... 1, 2, 3

35 U.S.C. § 285...........................................................1, 2, 6, 8, 9, 10, 11, 12, 13, 14, 15

Fed. R. Civ. P. 11 ..........................................................................1, 2, 7, 10, 11

Fed. R. Civ. P. 41(a)(2)...............................................................................................8

Fed. R. Civ. P. 54..............................................................................................15, 16

Fed. R. Civ. P. 54(d)(2)............................................................................................15

**TABLE OF EXHIBITS**

| Ex. 1 | U.S. Patent No. 9,148,762 to W. Scott Taylor ("the Asserted Patent"). |
| Ex. 2 | Declaration of W. Scott Taylor, May 9, 2014, purporting to be the sole inventor of the Asserted Patent. |
| Ex. 3 | U.S. Patent Application Publication No. 2011/0264246 to W. Scott Taylor and Tina Pantoja ("the '246 Publication"). |
| Ex. 4 | LinkedIn page of W. Scott Taylor showing employment at W2W, LLC. |
| Ex. 5 | IDS disclosing prior art for the Asserted Patent dated February 9, 2015, which does not list the '246 Publication. |
| Ex. 6 | Abridged and highlighted version of the Invalidity Chart of the '246 Publication included with SOTI's Invalidity Contentions served on WPEM on October 23, 2018, showing that the '246 Publication anticipates every claim of the Asserted Patent. |
| Ex. 6-1 | Original version of the Invalidity Chart of the '246 Publication included with SOTI's Invalidity Contentions served on WPEM on October 23, 2018, showing that the '246 Publication anticipates every claim of the Asserted Patent. |
| Ex. 7 | Comparison of specifications of the '246 Publication and the Asserted Patent, showing that the '246 Publication is included almost verbatim in the Asserted Patent. |
| Ex. 8 | Comparison of figures of the '246 Publication and the Asserted Patent, showing that every figure of the '246 Publication is reproduced in the Asserted Patent. |
| Ex. 9 | Declaration of Oscar Rambaldini ["Rambaldini Decl."], showing that the Speed Lockdown functionality of MobiControl was publicly available since January 7, 2013, and has not substantively changed since its introduction in Version 10, and the foregoing was readily identifiable. |
| Ex. 10 | Letter from R. Greeson to W. Ramey, August 27, 2018, demonstrating that the help-guide pages cited in WPEM's infringement contentions were substantially identical to the Version 10 manual which was available before the priority date of the Asserted Patent. |
| Ex. 11 | SOTI MobiControl – Release Notes, showing MobiControl Release v10.00 – Build 9329 was released on January 7, 2013, and "Introduces Speed-sensitive Lockdown to customize Lockdown screen when device is travelling faster than defined speed . . . " |
| Ex. 12 | Google search of "MobiControl Speed Lockdown," showing the first "hit" as a help guide for Version 10, released January 7, 2013. |
| Ex. 13 | Assignment of the Asserted Patent from Tina Pantoja and W. Scott Taylor to WPEM, wherein Ms. Pantoja states she "invented a SafeCell 360TM Wireless Policy Enforcement (WPEM) Solution ("Invention") for which one or more applications for patent, design registration, utility model registration, or other form of protection, rights, or title have been or will be made in certain countries ("Applications"), as further described below: US Patent No. 9,148,762; Issued September 29, 2015." |

| Ex. 14 | Letter from R. Greeson to W. Ramey, October 17, 2018, reiterating WPEM's Rule 11 violations, including both the failure to conduct a basic pre-suit investigation and the continued litigation of baseless claims. |
|---|---|
| Ex. 15 | Correspondence between R. Greeson and W. Ramey, July 9, 2018, R. Greeson explaining that the MobiControl accused functionality was available before the priority date of the Asserted Patent. |
| Ex. 16 | Correspondence between W. Ramey and R. Greeson, August 17–26, 2018, W. Ramey seeking to settle SOTI's claims for $429,000 rather than addressing R. Greeson's July 9 correspondence. |
| Ex. 17 | Correspondence between W. Ramey and E. Janitens, August 27–September 10, 2018, E. Janitens explaining that, to the extent the Version 14 help-guide allegedly demonstrates infringement of the Asserted Patent, the claims are necessarily invalidated by the substantially similar Version 10 help-guide that predates the Asserted Patent. |
| Ex. 18 | Correspondence between W. Ramey and E. Janitens, September 12, 2018, regarding the MobiControl Version 10 executable in response to W. Ramey requesting a working device and testing results. |
| Ex. 19 | Confirmation e-mail, October 2, 2018, demonstrating that Brett Crocket downloaded the MobiControl Version 10 Build 9160 executable, which includes the Speed Lockdown functionality that predates the priority date of the Asserted Patent. |
| Ex. 20 | Confirmation e-mail, October 8, 2018, demonstrating that Victoria Kubitskey downloaded the MobiControl Version 10 Build 9160 executable, which includes the Speed Lockdown functionality that predates the priority date of the Asserted Patent. |
| Ex. 21 | Correspondence from W. Ramey to R. Greeson, October 16, 2018, W. Ramey offering to settle all claims for $150,000. |
| Ex. 22 | Correspondence between W. Ramey and R. Greeson, October 24, 2018 (7:53 PM), W. Ramey offering to settle all claims for $75,000. |
| Ex. 23 | Correspondence between W. Ramey and R. Greeson, October 24, 2018 (8:45 PM), R. Greeson declining the settlement offer of $75,000, and W. Ramey then offering to "dismiss its claims with prejudice and grant a license in exchange for your clients dismissal of its claims and for your client to not pursue its attorneys' fees or costs." |
| Ex. 24 | Declaration of Robert Greeson ("Greeson Decl."). |

Plaintiff WPEM, LLC ("WPEM") initiated and maintained a baseless lawsuit against Defendant SOTI Inc. ("SOTI"), alleging infringement of U.S. Patent No. 9,148,762 ("Asserted Patent"). Now, SOTI—as a "prevailing party"—moves the Court to declare this case exceptional and award its attorneys' fees pursuant to 35 U.S.C. § 285.

## I.    __INTRODUCTION__

Very few patent infringement cases qualify as "exceptional" under 35 U.S.C. § 285—this one does. Although this case was short-lived, WPEM's Rule 11 violations and objectively unreasonable litigation conduct cause this case to "stand out from others."

Before suing someone for patent infringement, counsel for a potential plaintiff must investigate, *at a minimum*, some very basic facts to ensure it *at least has a colorable claim* that the asserted patent is enforceable and infringed. Such an investigation would be expected to include: (1) reviewing publicly-available and readily-identifiable information to determine if the accused products predate the asserted patent, (2) asking what relevant, non-patent or patent literature the plaintiff is aware of (e.g., its own patents and patent applications) that may qualify as prior art, (3) performing at least a cursory review of the asserted patent's file history to determine if documents identified at (2) were disclosed to the patent office during prosecution, and (4) performing at least a cursory review of publicly-available assignment records to determine, among other things, if all inventors properly assigned their interests in the asserted patent. WPEM's counsel either failed to perform most or all of the foregoing, or sued SOTI despite knowing the Asserted Patent was not enforceable and/or not infringed.

Early in this litigation, SOTI informed WPEM of obvious and material deficiencies in its claims that, without question, a basic pre-suit investigation would have revealed. Such deficiencies include:

(1)    SOTI's accused products were publicly-available before the priority date of the Asserted Patent, and therefore, to the extent the accused products could infringe the Asserted Patent, they necessarily invalidate same;

(2)    WPEM's own U.S. Patent Application Publication No. 2011/0264246 ("the '246 Publication") is invalidating prior art under 35 U.S.C. § 102(a)(1);

     (3)     The '246 Publication was not disclosed as prior art during prosecution of the Asserted Patent, and therefore, the Asserted Patent is unenforceable due to inequitable conduct; and

     (4)     The Asserted Patent is unenforceable due to incorrect inventorship.

WPEM's decision to sue SOTI despite the obvious deficiencies in its claims—that, again, even the most basic pre-suit investigation would have revealed—demonstrates that WPEM failed to conduct a pre-suit investigation, or knowingly filed and maintained a baseless lawsuit.  In either scenario, WPEM failed to meet the minimum standards imposed by Rule 11, which alone can qualify as exceptional conduct under Section 285.

Even after SOTI notified WPEM of the deficiencies in its claims, WPEM refused to meaningfully address the problems, but instead continued to pursue its baseless claims in an effort to extract a payment from SOTI.  In doing so, WPEM forced SOTI to continue incurring substantial attorneys' fees to defend a case that never should have been filed.  WPEM's course of conduct— beginning with its failure to conduct even the most basic pre-suit investigation continuing through to its decision to litigate despite being made aware of the obvious deficiencies in its claims—makes this case stand out from others and demonstrates "the unreasonable manner" in which WPEM litigated this case.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 1756 (2014).  Therefore, SOTI moves the Court to declare this case exceptional and award its attorneys' fees pursuant to 35 U.S.C. § 285.

## II.    <u>FACTUAL BACKGROUND</u>

WPEM filed its Complaint against SOTI on April 18, 2018, alleging that SOTI's MobiControl Speed Lockdown ("Accused Technology") infringes the Asserted Patent.  *See* Dkt. 1. On July 9, 2018, SOTI filed its answer and counterclaims, seeking a declaratory judgment of non-infringement and invalidity of the Asserted Patent.  *See* Dkt 10.

### A.    As WPEM Knew—the Asserted Patent Is Invalid Under 35 U.S.C. § 102(a)(1) in View of WPEM's Own Prior Patent Application.

The Asserted Patent issued on September 29, 2015, and claims priority to a provisional

application filed on May 9, 2013.  *See* Ex. 1.  During prosecution, W. Scott Taylor executed a declaration attesting to be the sole inventor of the Asserted Patent.  *See* Ex. 2.[1]

Notably, Mr. Taylor is also a named inventor on an earlier-filed patent application—U.S. Patent Application Publication No. 2011/0264246 ("the '246 Publication")—which was filed on April 21, 2011, and published on October 27, 2011.  *See* Ex. 3.  Both the Asserted Patent and the '246 Publication identify W2W LLC ("W2W") as the assignee of the patent.  *See* Exs. 1, 3. According to Mr. Taylor's LinkedIn page, he worked at "W2W LLC – SAFECELLapp" for more than five years (i.e., "Jan 2010 – Oct 2015"), where he "[w]orked directly with patent attorneys on the development of provisional, non-provisional, and PCT foreign patent applications."  Ex. 4 at 2; Ex. 24 at ¶ 2.  Mr. Taylor attributes to himself three patents that were filed during Mr. Taylor's employment at W2W, including both the '246 Publication and the Asserted Patent.  Ex. 4 at 2. Further, WPEM lists Mr. Taylor—a named inventor on both the '246 Publication and the Asserted Patent—as a person "financially interested in the outcome" of this case.  *See* Dkt. 4 at 1.

Although the Asserted Patent ***does not claim priority to or incorporate by reference*** the '246 Publication, it nonetheless mentions the '246 Publication (i.e., in the "Detailed Description," but not in the "Background").   Specifically, the Asserted Patent states that, while "various embodiments of the present invention incorporate . . . or may be used with several of the features disclosed in [the '246 Publication] . . . [s]ome of the features in the prior application have been improved and/or modified in the present application."  *See* Ex. 1, 17:5–15.  As such, the Asserted Patent fails to acknowledge that the '246 Publication qualifies as prior art (nor did prosecution counsel during prosecution of the Asserted Patent).  *Id.*; Ex.  5.

Despite not being cited as prior art, the '246 Publication unquestionably describes every feature of the Asserted Claims, rendering the Asserted Patent invalid under 35 U.S.C. § 102(a)(1). This is shown by a fair and objective comparison between the disclosure of the '246 Publication and the claims of the Asserted Patent.  *See* Exs. 6, 6-1.  Unsurprisingly, the '246 Publication clearly served as the starting point for the Asserted Patent.  A comparison of the two documents shows

---

[1] Mr. Taylor is the sole inventor listed on the Asserted Patent.  Ex. 1.

that the specification of the '246 Publication is included almost verbatim in the Asserted Patent and every figure of the '246 Publication is reproduced in the Asserted Patent.  *See* Exs. 7, 8.

### B.  *A Very Basic* Inquiry Would Have Revealed the Accused Technology Predates the Asserted Patent.

The technology accused of infringement by WPEM is SOTI's MobiControl Speed Lockdown functionality ("Accused Technology").[2]  *See* Dkt. 1 at ¶ 10.  Readily-identifiable and publicly-available information plainly shows the Accused Technology was offered for sale at least as early as January 7, 2013, i.e., five (5) months before the priority date of the Asserted Patent.

SOTI introduced its Speed Lockdown functionality in MobiControl Version 10 on November 19, 2012.  Ex. 9 at ¶ 3.  The Speed Lockdown functionality of MobiControl—which is the Accused Technology—has not substantively changed since its introduction in MobiControl Version 10.  *Id.* at ¶ 7.[3]  This is all shown by the "Release Notes" portion of SOTI's website, which has been and is publicly-available and readily-identifiable.  *Id.* at ¶¶ 5–6.  For example, the SOTI website includes release notes for Version 10, showing that Build 9329 of Version 10 was publicly available at least as early as January 7, 2013.  *Id.* at ¶¶ 4, 6; Ex. 11 at 4 ("Introduces Speed-sensitive Lockdown to customize Lockdown screen when device is travelling faster than defined speed . . . ."); Ex. 24 at ¶ 3.  *The foregoing information is discoverable by an extremely simple online search*.  Indeed, a Google search for "MobiControl Speed Lockdown" results in the first "hit" being the help guide for MobiControl Version 10.  Ex. 12; Ex. 24 at ¶ 4.  Therefore, anyone conducting a basic Internet search relating to the Accused Technology would discover that it, including the specifically-accused functionality, was available before the priority date of the

---

[2] "Device lockdown replaces the standard device home screen and Windows Start button with a customizable home screen.  Users have access only to authorized applications and websites, and are prevented from accessing all other applications and device controls while on the road.  This promotes greater safety by disabling distracting features on a mobile device while workers are on the road."
*See* https://www.soti.net/mc/help/v10/en/Content/Web/Devices/Android/Device-Configuration-Speed-Lockdown.htm. (© 2013).

[3] This fact is easily discernable through a comparison of the MobiControl Version 14 guide related to Speed Lockdown (which is cited in WPEM's complaint) and the Version 10 guide, which is virtually identical.  *See, e.g.*, *id.* at ¶ 8; Ex. 10 (Letter to W. Ramey demonstrating that the Speed Lockdown functionality has not changed since Version 10).

-4-

Asserted Patent.

Although WPEM and/or its counsel knew or should have known the Accused Technology predated the Asserted Patent, SOTI removed any doubt when it informed WPEM that the Accused Technology was introduced in November 2012, and that it has not substantively changed since its introduction. [4]   *See* Ex. 10; Ex. 9 at ¶¶ 3–4, 7;.   Because the Accused Technology was publicly-available and offered for sale before the priority date of the Asserted Patent, it is prior art to the Asserted Patent under 35 U.S.C. § 102(a).  Therefore, to the extent the Accused Technology could infringe the Asserted Claims, it invalidates them under 35 U.S.C. § 102(a).  *See infra* Section IV.B.

### C.      WPEM Knew or Should Have Known the Asserted Patent Is Unenforceable Due to Inequitable Conduct.

The failure to disclose the '246 Publication as prior art during prosecution of the Asserted Patent qualifies as inequitable conduct.  More important to the issues at hand, WPEM's decision to sue SOTI with that knowledge, or its refusal to acknowledge the Asserted Patent's unenforceability for that reason after being notified by SOTI's counsel, makes this case stand out with respect to the substantive strength of the parties' positions and the unreasonable manner in which the case was litigated.

That is, considering the commonality between the '246 Publication and the Asserted Patent, the prior art '246 Publication is—from any reasonable viewpoint—highly material to the patentability of the claims of the Asserted Patent.  But, it was never disclosed to the Patent Office.  Instead, a single Information Disclosure Statement ("IDS"), which did not identify the '246 Publication, was filed by prosecution counsel (who also prosecuted the '246 Publication).  *See* Ex. 5.  As a result, the Examiner never considered the '246 Publication in resolving patentability of the Asserted Claims.

---

[4] Although SOTI introduced the technology in November 2012, that date is not reflected on SOTI's website or in a basic Internet search for the Accused Technology.  For that reason, SOTI relies primarily on the January 7, 2013 date, which is clearly reflected on its website and which WPEM and/or its counsel would have uncovered had they performed even the most basic investigation into the Accused Technology.

### D.      Even a Cursory Investigation Would Have Revealed Incorrect Inventorship.

Although Mr. Taylor is the only named inventor on the Asserted Patent, the '246 Publication—which discloses every feature of the Asserted Claims—names an additional inventor: Tina Pantoja.  *See* Ex. 3.  Publicly-available assignment records show that Ms. Pantoja should also have been named as an inventor on the Asserted Patent.  Specifically, assignment records for the Asserted Patent include a signed declaration from Ms. Pantoja, in which she declares under penalty of perjury that she is, in fact, an inventor of the Asserted Patent.  *See* Ex. 13.  Again, ***the foregoing information is discoverable by an extremely simple online search***.  A cursory review of public assignment records would have informed WPEM's counsel that Ms. Pantoja believes herself to be an inventor of the Asserted Patent.  *See id.*

There can be no dispute that WPEM was aware of Ms. Pantoja and considers her relevant to this lawsuit given that WPEM listed her as a person "financially interested in the outcome" of this case.  Dkt. 4 at 1.  The most reasonable conclusion is that WPEM's counsel was unaware of Ms. Pantoja's status as an inventor because it failed to adequately investigate the assignment records, or worse, it was aware and decided to file suit.  Despite being informed of Ms. Pantoja's declaration during this litigation (*see, e.g.*, Ex. 14 at 3), WPEM's counsel refused to address this issue.  The failure to name the correct inventors—like the failure to disclose information known to be material to patentability—renders a patent unenforceable.

### E.      WPEM's Litigation Conduct Qualifies As Exceptional Under Section 285.

On July 9, 2018, SOTI pleaded that the Asserted Claims are invalid in light of SOTI's MobiControl Version 10.00 (Build 9329).  Dkt. 10 at ¶ 29.  On the same day, SOTI's counsel sent correspondence to WPEM's counsel reiterating that Version 10 of the Accused Technology (including the specific functionality accused of infringement) was publicly-available before the priority date of the Asserted Patent, and to the extent the Accused Technology could infringe the Asserted Patent, it invalidates same under 35 U.S.C. § 102(a).  *See* Ex. 15.

WPEM's counsel refused to address this issue.  Instead, WPEM continued to pursue its

claims in an effort to extract a payment.   On August 17, 2018, WPEM's counsel sent correspondence to SOTI's counsel, not addressing the July 9 correspondence, but instead seeking $429,000 to settle its claims. Ex. 16.  SOTI's counsel again reiterated that the Accused Technology was publicly-available before the priority date of the Asserted Patent *and provided documents demonstrating that the help-guide pages cited in WPEM's infringement contentions were substantially identical to SOTI's Version 10 manual*, which predated the Asserted Patent. Exs. 17, 10.

Over the next two weeks, WPEM's counsel requested a "working device" and "working embodiment," and then requested a "manual from the time of the alleged inclusion of the feature" and "testing results from the newly added feature."  Ex. 17; Ex. 18 at 5.   While none of the additional requested information was needed to prove the Accused Technology predates the Asserted Patent, in an effort to accommodate WPEM and resolve this case with no additional fees, *SOTI's counsel provided WPEM with a fully executable copy of the MobiControl Version 10 (available at least as early as January 7, 2013), along with directions for its use*.  *See* Ex. 18 at 2–5.  WPEM's counsel, Brett Crockett and Victoria Kubitskey, viewed the executable file (*see* Exs. 19, 20), but did not address this issue despite multiple follow-up emails from SOTI's counsel. *See* Ex. 18 at 1–2.

Instead, on October 16, 2018, WPEM again attempted to extract a payment, this time requesting $150,000—which WPEM's counsel characterized as "a steep reduction from our previous offer."  Ex. 21.  The next day, SOTI's counsel sent a letter reiterating WPEM's Rule 11 violations, including its failure to conduct a basic pre-suit investigation and continued litigation of baseless claims, and requesting that WPEM's counsel withdraw its Complaint.  *See* Ex. 14.

On October 23, 2018, to comply with the Court's Docket Control Order (Dkt. 26), SOTI served its invalidity contentions, in which it reiterated that the Accused Technology and the '246 Publication constitute invalidating prior art.  *See* Dkt. 27.  The next day, WPEM's counsel again attempted to extract a payment, this time stating that WPEM "would accept $75k to settle all claims in this lawsuit."  Ex. 22.  On the same day, SOTI declined WPEM's request.  Ex. 23.  *Less than*

*one hour later*, WPEM's counsel sent an email stating that "WPEM offers to dismiss its claims with prejudice and grant a license in exchange for your clients dismissal of its claims and for your client to not pursue its attorneys [sic] fees or costs."  *Id.*

Thereafter, on October 30, 2018, WPEM filed a motion to dismiss its claims against SOTI *with prejudice*.  *See* Dkt. 28.  On November 20, 2018, SOTI filed its response, explaining that SOTI does not oppose WPEM's motion, but "does not believe each Party should bear its own costs and fees."  SOTI requested that the Court dismiss its counterclaims *without prejudice*.  Dkt. 30. The Court granted WPEM's motion to dismiss *with prejudice* on March 6, 2019.  Dkt. 36.

## III.   LEGAL STANDARD

Section 285 authorizes district courts to award reasonable attorney fees to the "prevailing party" in "exceptional cases."  35 U.S.C. § 285.  A "prevailing party" is one that receives at least some relief on the merits, which alters the legal relationship between the parties by modifying one party's behavior in a way that directly benefits the opposing party.[5]  *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014).  "When a party seeks dismissal of an action under Rule 41(a)(2) unilaterally, rather than as part of a settlement, the opposing party is ordinary regarded as the prevailing party" because a dismissal with prejudice "has res judicata effects that result in a judicially sanctioned change in the legal relationship of the parties."  *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 4910875, at *1 (E.D. Tex. Aug. 17, 2015).

An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane*, 134 S. Ct. at 1756.  A party's unreasonable conduct need not be independently sanctionable to warrant a finding of exceptionality.  *Id.* at 1757.  A district court may exercise its discretion, in light of the totality of circumstances, to determine whether a case is exceptional.  *Id.*  Thus, even though "each individual action by plaintiff may not have been 'exceptionally' unreasonable, the totality of the

---

[5]  Status as a "prevailing party" in the context of patent litigation is a threshold question governed by Federal Circuit law.  *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181–82 (Fed. Cir. 1996).

circumstances [may nonetheless be] indicative of the type of 'exceptional case' that justifies an award of fees." *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. 1:12-CV-01138-SLR, 2016 WL 1267159, at *3 (D. Del. Mar. 31, 2016).

Factors that may indicate exceptionality include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Additional "factors relevant to the inquiry include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008).  Similarly, "[i]f the patentee prolongs litigation in bad faith, an exceptional finding may be warranted." *Id.*  Evidence that a plaintiff seeks nuisance settlement and has no intention of testing the merits of its case is also relevant under § 285. *See, e.g.*, *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015).  Reasonably clear invalidity of the patent can also make a case "exceptional." *See, e.g.*, *id.* at 1348–49.

IV.   **ARGUMENT**

A.   **SOTI Is the Prevailing Party in This Lawsuit.**

SOTI is a "prevailing party" as that term is used in § 285.  WPEM unilaterally moved the Court to dismiss its claims *with prejudice*, and the Court did so. *See* Dkt. 28, 36.  Because WPEM's voluntary dismissal with prejudice (1) resulted in SOTI receiving relief on the merits, and (2) has res judicata effects that change the legal relationship of the parties, SOTI is the prevailing party for purposes of § 285. *See, e.g., SSL Servs.*, 769 F.3d at 1086; *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).

B.   **This Case Is Exceptional Under § 285.**

WPEM's conduct in bringing and maintaining claims it knew or should have known were meritless renders this case exceptional under 35 U.S.C. § 285.  First, WPEM sued SOTI when it

knew (and its counsel knew or should have known) that the inventors' own prior publication (the '246 Publication) invalidated the claims of the Asserted Patent.  Second, WPEM failed to perform a rudimentary investigation into the date the Accused Technology became publicly-available.  If it had, it would have determined that the Accused Technology came first.  Third, WPEM decided to assert a patent that was unenforceable due to inequitable conduct (for failure to cite the '246 Publication as prior art during prosecution) and incorrect inventorship, both of which were readily identifiable problems.  From any reasonable viewpoint, WPEM and its counsel either (a) failed to conduct a pre-suit investigation that would have uncovered the obvious deficiencies, or (b) sued SOTI despite knowing the Asserted Patent was invalid and/or unenforceable.

In either scenario, once WPEM was expressly informed of the deficiencies, its conduct thereafter was exceptional.  That is, even when expressly notified of the deficiencies by SOTI's counsel, WPEM made the unreasonable decision to pursue claims it knew to be meritless—solely to extract a payment.  WPEM's repeated, unilateral attempts to extract a nuisance value settlement show it did not believe in the merits of its case.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (a plaintiff's attempts to "exploit[] the high cost to defend complex litigation to extract [] nuisance value settlement[s]" supports a finding of exceptionality).

Any of the foregoing behavior would alone be sufficient to render this case exceptional under § 285.  Taken together, it shows a pattern of behavior that constitutes "abuse of the courts." *Eltech Sys. Corp. v. PPG Ind., Inc.*, 903 F.2d 805, 810–11 (Fed. Cir. 1990).  Such conduct is not only a violation of Rule 11, but also renders this case exceptional under § 285.  *Id.* (affirming the district court's determination that the case was exceptional because "abuse of the courts through manifestly unreasonable lawsuits based on uninvestigated allegations" is a violation of Rule 11).

1.  WPEM Violated Rule 11 by Suing SOTI—Which Is Exceptional Here.

An attorney must conduct a pre-suit investigation sufficient to form a reasonable belief that there "is a reasonable chance of proving infringement."  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  Rule 11 also requires a party filing suit to have a reasonable belief the asserted patent is valid and enforceable.  *Q-Pharma, Inc. v. Andrew Jergens*

*Co.*, 360 F.3d 1295, 1303 (Fed. Cir. 2004).  Failure to conduct an appropriate pre-suit investigation may render the case exceptional under § 285.  *See Eltech*, 903 F.2d at 810–11.  Here, WPEM either failed to conduct a basic pre-suit investigation or simply ignored known deficiencies with its claims.  Either way, WPEM's conduct constitutes a violation of Rule 11 and is sufficient to render this case exceptional under § 285.

### a.   *WPEM Failed to Conduct an Adequate Pre-Suit Investigation Regarding the Accused Technology.*

A simple internet search reveals that the Accused Technology, including the specific functionality accused of infringement, was publicly-available before the priority date of the Asserted Patent.  *See supra* Section II.B.  However, WPEM failed to investigate the Accused Technology.  If it had, it would have easily found publicly-accessible and readily-identifiable documents demonstrating that the Accused Technology (and, again, the specific functionality accused of infringement) was publicly-available before the priority date of the Asserted Patent.  *See supra* Section II.B.  To the extent the Accused Technology could infringe the Asserted Patent, it necessarily invalidates same under 35 U.S.C. § 102(a).  *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) ("That which infringes if later anticipates if earlier.").  WPEM's failure to uncover such a readily-identifiable fact demonstrates its failure to meet the minimum standards imposed by Rule 11 and also supports a determination that this is an exceptional case under § 285.  *See*, *e.g.*, *Eltech*, 903 F.2d at 810–11 (finding the case exceptional based on plaintiff's decision to file suit on uninvestigated allegations in violation of Rule 11).

### b.   *WPEM Simply Ignored the '246 Publication.*

There is no dispute that WPEM (in which the named inventors have a financial interest) knew of the '246 Publication.  It is difficult to imagine a scenario where WPEM's counsel could remain unaware of the '246 Publication if a reasonable pre-suit investigation was performed.  WPEM's decision to sue SOTI despite knowing about the '246 Publication, and its counsel's failure to conduct an adequate pre-suit investigation regarding same, is also a Rule 11 violation and also qualifies as exceptional litigation conduct.

Further, if the overlap in inventorship and named assignee (W2W) between the '246 Publication and the Asserted Patent were not enough to inform WPEM's counsel of the '246 Publication,[6] merely reading the Asserted Patent would have.  The Asserted Patent expressly references the '246 Publication and describes the Asserted Patent as an "improve[ment] and/or modifi[cation]" thereof.  Ex. 1 at 7:5–15; *see also supra* Section II.A.  It is readily apparent that the '246 Publication describes every feature of the claims of the Asserted Patent.  *See* Exs. 6, 6-1. Given that the '246 Publication was published more than one year before the priority date of the Asserted Patent,[7] it qualifies as invalidating prior art under 35 U.S.C. § 102.  Any adequate pre-suit investigation—e.g., merely reading the Asserted Patent and the '246 Publication referenced therein—would have revealed that the Asserted Patent is invalid in light of the '246 Publication.

The failure to properly assess the disclosure of the '246 Publication and determine that it clearly invalidates the claims of the Asserted Patent—or alternatively, WPEM's decision to file its Complaint while disregarding same—amounts to objective unreasonableness and supports a finding that this case is exceptional under § 285.  *See Octane*, 134 S. Ct. at 1756.

c. *WPEM Either Failed to Identify—Or Simply Ignored—that the Patent Office Was Not Made Aware of Key Prior Art During Prosecution.*

As noted above, there is no dispute that WPEM knew of the '246 Publication, and it is difficult to imagine a scenario where WPEM's counsel could remain unaware of the '246 Publication if a reasonable pre-suit investigation was performed.  Given the same inventorship and assignee, and that the '246 Publication is included almost verbatim in the Asserted Patent—the '246 Publication is, from any reasonable viewpoint, highly material to patentability of the Asserted Patent.  WPEM and its counsel either failed to identify, or simply ignored, that this key prior art was not disclosed during prosecution of the Asserted Patent, rendering it unenforceable due to inequitable conduct.

---

[6] W2W LLC comprises the same members [e.g., the inventors], is a predecessor entity, or otherwise related to WPEM, LLC, which now owns the Asserted Patent.  *See* Ex. 4 at 2; Ex. 24 at ¶ 2.

[7] The '246 Publication was published on October 27, 2011, approximately 18 months before the effective filing date of the Asserted Patent on May 9, 2013.  *See supra* Section II.A.

Individuals involved in the prosecution of a patent application have a "duty to disclose to the [Patent] Office all information known to that individual to be material to patentability." 37 C.F.R. § 1.56. That duty was breached when the patentee and its attorney failed to disclose the '246 Publication during prosecution of the Asserted Patent. While it cannot be disputed that the patentee knew of the '246 Publication, it never disclosed the '246 Publication to the Patent Office as prior art—as it was required to do. Ex. 5; *see supra* Section II.C. Further, the manner in which the '246 Publication is characterized in the Asserted Patent, i.e., as an application that was "improved and/or modified"—obfuscates the fact that it qualifies as material prior art.

Because the patentee failed to disclose the '246 Publication to the Patent Office, and further obfuscated the fact that the '246 Publication qualified as prior art, the Examiner never considered the '246 Publication in resolving patentability of the claims Asserted Patent. *See* Ex. 1 ("References Cited"); *see also supra* Section II.C. The patentee's conduct constitutes inequitable conduct that renders the Asserted Patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (the Court may find inequitable conduct if "the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.").

Even a cursory review of the Asserted Patent's file history would have revealed to WPEM and its counsel that the '246 Publication was never considered by the Examiner. It follows that WPEM (1) read the Asserted Patent and its file history but disregarded that a known anticipatory reference was not disclosed, or (2) did not review the Asserted Patent and/or its file history before filing the Complaint. Either way, this conduct is also "unreasonable" and further supports a finding that this case is exceptional under § 285. *Octane*, 134 S. Ct. at 1756.

> d.    *WPEM Filed Suit Without Ascertaining Correct Inventorship.*

Any adequate pre-suit investigation would have uncovered that the Asserted Patent is invalid because it fails to name all inventors. As explained above, the '246 Publication—which served as the starting point for the Asserted Patent and discloses every feature of the Asserted Claims—lists two inventors: Tina Pantoja and W. Scott Taylor. *See supra* Section II.D. Although Mr. Taylor is the sole inventor named on the Asserted Patent, publicly-available assignment

records demonstrate that Ms. Pantoja should also have been named as an inventor.  *See supra* Section II.D.  This renders the Asserted Patent invalid.  *See In re VerHoef*, 888 F.3d 1362, 1367–68 (Fed. Cir. 2018) (explaining that "the naming of the correct inventor or inventors [is] a condition of patentability," and "failure to name them renders a patent invalid").  Even a cursory review of the Asserted Patent's bibliographic information and public assignment records—which WPEM's counsel should have performed to verify that WPEM had standing to file suit—would have revealed that the correct inventors were not named.  Again, the failure of WPEM and/or its counsel to perform such a review supports a finding of exceptionality.  *Octane*, 134 S. Ct. at 1757.

### 2.  WPEM's Continued Assertion of Claims It Knew Were Meritless in an Effort to Extract Payment Also Renders This Case Exceptional.

WPEM's continued pursuit of its claims to force a nuisance settlement supports a finding of exceptionality under § 285.  District courts have frequently found exceptionality under circumstances far less severe.  *See, e.g.*, *Bayer Cropscience AG v. Dow Agrosciences LLC*, No. CV 12-256 (RMB/JS), 2015 WL 1197436, at *8–9 (D. Del. Mar. 13, 2015) (finding exceptionality because plaintiff's decision to litigate "th[e] case in the face of evidence that contradicted [its claims] was objectively unreasonable"); *Novartis Corp. v. Webvention Holdings LLC*, No. CIV. CCB-11-3620, 2015 WL 3901639, at *5–6 (D. Md. June 22, 2015) (finding exceptionality where plaintiff continued to pursue claims despite receiving evidence from a third-party indicating that Asserted Patent was likely invalid); *Classen Immunotherapies, Inc. v. Biogen Idec*, No. CIV. WDQ-04-2607, 2014 WL 2069653, at *4–6 (D. Md. May 14, 2014) (finding exceptionality where plaintiff continued to pursue claims despite being in possession of correspondence from defendant stating that "[it] did not develop, manufacture, or sell the allegedly infringing [products]").

Here, despite being repeatedly informed by SOTI's counsel that both the '246 Publication and the Accused Technology constituted invalidating prior art, WPEM refused to substantively address the issue.  Instead, WPEM persisted in pursuing its infringement claims, all the while making unilateral, nuisance-value settlement demands.  *See supra* Section II.E.  Indeed, each time SOTI's counsel notified WPEM of a deficiency in its claims or reiterated same, SOTI responded

-14-

with another settlement demand.  *Id.*  WPEM's strategy was one of minimal effort with the goal of "exploiting the high cost to defend complex litigation to extract [] nuisance value settlement[s]." *Eon-Net*, 653 F.3d at 1327.  Such vexatious litigation conduct supports a finding of exceptionality under § 285.  *Id.*

### 3.   The Totality of the Circumstances In This Case Render It Exceptional.

If the Court finds that the circumstances discussed above, when viewed individually, are insufficient to render this case exceptional, the totality of the circumstances demonstrate that WPEM's conduct makes this case "standout" from routine patent cases.  *Octane*, 134 S. Ct. at 1756.  WPEM's "extensive misconduct" constituted "an abusive 'pattern' or a vexatious 'strategy' that was 'pervasive' enough to infect the entire litigation."  *Monolithic Power Systems, Inc. v. O2 Micro International, Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013).  As shown, WPEM filed this case without performing even a basic pre-suit investigation.  WPEM's strategy was one of minimal effort with the goal of "exploiting the high cost to defend complex litigation to extract [] nuisance value settlement[s]."  *Eon-Net LP*, 653 F.3d at 1327 (explaining that such conduct may render a case exceptional under § 285).  For example, WPEM continued to pursue its infringement claims in the face of evidence demonstrating invalidity and/or unenforceability of the Asserted Patent.  In doing so, WPEM caused SOTI to unnecessarily bear the burden of, e.g., extensive invalidity contentions, discovery, and motion practice.  Although WPEM did eventually move to dismiss its claims against SOTI, it did so knowing its claims were baseless, and only in light of the risk of sanctions.  WPEM's conduct prolonged the litigation and caused a waste of substantial resources.

## V.   **ATTORNEYS' FEES SOUGHT & CONCLUSION**

In view of the foregoing, SOTI moves the Court to declare this case exceptional and award its attorneys' fees pursuant to 35 U.S.C. § 285.  Pursuant to Rule 54(d)(2), SOTI's estimate of accrued attorneys' fees is $182,207.  Should the Court determine SOTI is entitled to an award of its fees, SOTI shall submit additional information related to work done, hourly rates, and costs.[8]

---

[8] Rule 54(d)(2) does not require that a motion for attorneys' fees "be supported at the time of filing with evidentiary material bearing on the fees."  Fed. R. Civ. P. 54, Advisory Committee's Note (1993).  Instead, this material may "be

Date:  March 15, 2019

Respectfully submitted,

By    */s/  Robert Greeson*        
        Robert Greeson

**NORTON ROSE FULBRIGHT US LLP**
Robert Greeson (Texas Bar No. 24045979)
**Lead Attorney**
robert.greeson@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Tel:    (214) 855-7430
Fax:    (214) 855-8200

Erik Janitens (Texas Bar No. 24097878)
erik.janitens@nortonrosefulbright.com
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Tel:    (713) 651-3629
Fax:    (713) 651-5246

**Attorneys for Defendant SOTI INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 15, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

        */s/  Robert Greeson*        
        Robert Greeson

---

submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case." *Id.* Accordingly, SOTI respectfully requests guidance from the Court regarding what, if any, additional material it would like to receive and when it would like to receive such material.

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h). SOTI's motion is opposed.  On March 15, 2019, counsel for SOTI, Robert Greeson, and counsel for WPEM, William Ramey, discussed SOTI's Motion by telephone.  Counsel for SOTI and WPEM discussed their respective positions and could not reach an agreement.  WPEM opposes SOTI's Motion in its entirety and all relief sought therein.  The discussion conclusively ended in an impasse.

*/s/  Robert Greeson*
Robert Greeson
