# EXHIBIT 14

October 17, 2018

# NORTON ROSE FULBRIGHT

**Via FedEx &**
**Email: wramey@rameyfirm.com**

Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
United States

**Robert Greeson**
**Partner**
Direct line +1 214 855 7430
robert.greeson@nortonrosefulbright.com

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006

Tel +1 214 855 8000
Fax +1 214 855 8200
nortonrosefulbright.com

Re: WPEM, LLC v. SOTI Inc. (WPEM's Violations of Federal Rule of Civil Procedure 11)

Bill:

I am writing to address WPEM's multiple violations of Rule 11. Early on, we provided proof that the Accused Technology was in public use, offered for sale, and otherwise available before the effective filing date of the Asserted Patent. This information was readily identifiable (by, e.g., basic internet inquiries) when WPEM filed it Complaint. Therefore, it is clear that WPEM failed to conduct a reasonable pre-suit investigation as required by Rule 11.

Aside from your refusal to dismiss WPEM's Complaint in view of the foregoing (in further violation of Rule 11), we have identified other conduct that also violates Rule 11. To remove any doubt that you are aware of these issues and afford you an opportunity to withdraw WPEM's Complaint and avoid the possibility of sanctions, WPEM's multiple violations of Rule 11 are outlined below.

## The Accused Technology Was Available Before the Priority Date of the Asserted Patent

Soon after WPEM filed its Complaint, you were informed that the Accused Technology was available before the effective filing date of the Asserted Patent. On August 27, 2018, I sent a letter and supporting documents that clearly demonstrate the Accused Technology was in public use and available before the effective filing date of the Asserted Patent. *See* Ex. 1; Ex. 2 at 3. That same day, we confirmed, at your request, that the supporting documents were publicly available as of January 2013. Ex. 2 at 2.

We followed-up with you regarding these issues several times, including on September 6, 2018. *See id.* However, rather than address the supporting documentation, you intimated (incorrectly) that we were required to show that a working embodiment was available before the effective filing date of the Asserted Patent. *Id.* at 1. Further, you requested that we provide a manual showing certain functionality (which had already been provided) and "testing results." Ex. 3 at 5. In hopes of resolving this matter quickly, we satisfied your request and sent a link to an executable file of the Accused Technology that predates the Asserted Patent. *Id.* at 2-4. We know that Brett Crockett (Ex. 4) and Victoria Kubitskey (Ex. 5) viewed the executable file. Yet, despite our repeated follow-up emails (e.g., Ex. 3 at 1-2), you have provided no meaningful response and continued to assert the Complaint in violation of Rule 11.

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

William P. Ramey, III
Ramey & Schwaller, LLP
October 17, 2018
Page 2

**NORTON ROSE FULBRIGHT**

**WPEM's Own Prior Art Invalidates The Asserted Patent**

On April 21, 2011, W2W LLC [1] filed U.S. Patent Application No. 13/091,977 (the "'977 Application"), which published as U.S. Patent Application Publication No. 2011/0264246 (the "'246 Publication") on October 27, 2011, and was subsequently abandoned.  The Asserted Patent, which was also filed by W2W LLC, claims priority to a provisional patent application filed on May 9, 2013.  Accordingly, the '246 Publication was made available to the public ***more than one year*** prior to the effective filing date of the Asserted Patent.

Comparing the '246 Publication to the Asserted Patent reveals that the '246 Publication served as the starting point for drafting the Asserted Patent.  The entirety of the '246 Publication is found ***almost verbatim*** in the Asserted Patent.  In other words, while the Asserted Patent includes additional text (largely relating to specific, low-level implementation details), an overwhelming majority of the original text found in the '246 Publication is included in the Asserted Patent.

Most importantly, the '246 Publication describes every feature of the Asserted Claims, and therefore, qualifies as prior art at least under 35 U.S.C. § 102(a)(1).  This is illustrated in the attached claim chart (Ex. 6), which will be served with SOTI's Invalidity Contentions.

It is difficult to imagine a scenario where you or WPEM could remain unaware of the '246 Publication if you conducted a reasonable pre-suit investigation in the spirit of Rule 11.  Assuming you were aware of the '246 Publication, your failure to properly assess its disclosure and determine that it clearly invalidates the claims of the Asserted Patent—or alternatively—your decision to file WPEM's Complaint while disregarding same—amounts to sanctionable conduct. On the other hand, assuming you were unaware of the '246 Publication, you are now on notice that it anticipates the claims of the Asserted Patent.  A refusal to dismiss WPEM's allegations of infringement in view of the foregoing and the attached claim chart will further violate Rule 11.

**The Asserted Patent Is Unenforceable Due to Inequitable Conduct**

As you should have identified before filing the Complaint, the Asserted Patent is invalid as a result of the inequitable conduct that occurred during its prosecution before the USPTO.  Under 37 C.F.R. § 1.56:

> [e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . . .

The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by 37 C.F.R. §§ 1.97(b)-(d) and 1.98, i.e., submitted in an Information Disclosure Statement (IDS).  *See* 37 C.F.R. § 1.56.

---

[1] W2W LLC is apparently a predecessor entity or otherwise related to WPEM, LLC, which now owns the Asserted Patent.

73562751.1

William P. Ramey, III
Ramey & Schwaller, LLP
October 17, 2018
Page 3

NORTON ROSE FULBRIGHT

However, with respect to the '246 Publication, the Asserted Patent merely states:

> [t]he various embodiments of the present invention incorporate or may incorporate or may be used with several of the features disclosed in Applicant's U.S. patent application Ser. No. 13/091,977, published as Publ. No. US 2011/0264246. Some of the features in the prior application have been improved and/or modified in the present application.

Therefore, the Asserted Patent failed to inform the Examiner that the '246 Publication actually qualified as prior art. Further, *the '246 Publication was never included in an IDS in compliance with 37 C.F.R. § 1.97*. As a result, as seen from the file history, the Examiner never considered the '246 Publication in resolving patentability of the Asserted Patent. This is particularly troublesome considering that the '246 Publication and the Asserted Patent were prosecuted by the same law firm, i.e., Andrews Kurth LLP.

In any event, it follows that you either read the Asserted Patent and its file history but disregarded the fact that a highly material (and anticipatory) reference was not cited in an IDS or considered during prosecution, or (2) did not review the Asserted Patent and/or its file history before filing the Complaint. In either scenario, your conduct violated Rule 11.

Considering the commonality between the '246 Publication and the Asserted Patent, the '246 Patent is, from any reasonable viewpoint, highly material. If withheld information or a misrepresentation is highly material, then an intent to deceive may be inferred (*see Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.*, 901 F. Supp. 718 (S.D.N.Y. 1995)). Further, care should be taken to see that prior art or other information cited in a specification or in an information disclosure statement is properly described and that the information is not incorrectly or incompletely characterized. *See Apotex v. UCB, Inc.*, 763 F.3d 1354, 1361-62, 112 USPQ2d 1081, 1087-88 (Fed. Cir. 2014) (finding that the patent specification omitted material information was among the facts that supported a conclusion that the patent is unenforceable due to inequitable conduct).

### The Asserted Patent Is Unenforceable Due to Incorrect Inventorship

As you should have also identified before filing the Complaint, the Asserted Patent is unenforceable because it fails to list an inventor. Correct inventorship is a basic requisite to enforcing a patent. The '246 Publication lists two inventors: Tina Pantoja ("Pantoja") and William Scott Taylor ("Taylor"). Inexplicably, even though the Asserted Patent copied the text from the '246 Patent, it only lists Taylor as the sole inventor. Without more, an attorney reasonably investigating which individual and/or entity has the right to enforce the Asserted Patent would have resolved this issue as a first step prior to filing WPEM's Complaint.

Further, on April 16, 2018, Pantoja, who was previously assigned an interest in the Asserted Patent from W2W LLC, assigned her interest to WPEM LLC (presumably to allow WPEM to enforce the Asserted Patent). In doing so, Pantoja stated:

> [I] have invented a SafeCell 360TM Wireless Policy Enforcement (WPEM) Solution ("Invention") for which one or more application for

William P. Ramey, III
Ramey & Schwaller, LLP
October 17, 2018
Page 4



> patent, . . . have been made . . . as described below:  US Patent
> No. 9,148,762; Issued September 29, 2015 [i.e., the Asserted
> Patent].

In other words, an unnamed inventor affirmatively stated (in a notarized document) just weeks
before WPEM filed its Complaint that she is, in fact, an inventor.  Even a cursory review of the
Asserted Patent's bibliographic information and USPTO assignment records would have revealed
the incorrect inventorship problem.  You and/or WPEM's failure to perform such a review to ensure
the Asserted Patent can properly be enforced is yet another example of behavior that has cost
SOTI considerable time and effort in defending a baseless lawsuit.

## Conclusion

In view of the foregoing, we request that you immediately dismiss the Complaint.  The failure to
do so within ten (10) days will result in SOTI preparing a draft motion for sanctions in accordance
with the safe-harbor provision of Rule 11.  In the event SOTI is required to prepare the draft motion
for sanctions, we will seek, among other things, our reasonable and necessary attorneys' fees
and costs incurred to date.

Should you have care to discuss these matters, please let me know.

Very truly yours,

Robert Greeson

RLG
Attachments: Exs. 1 - 6

# EXHIBIT 1

August 27, 2018

## NORTON ROSE FULBRIGHT

**FRE 408 Communication**

**Via Email: wramey@rameyfirm.com
and First Class Mail**

Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
United States

**Robert Greeson**
Partner
Direct line +1 214 855 7430
robert.greeson@nortonrosefulbright.com

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006

Tel +1 214 855 8000
Fax +1 214 855 8200
nortonrosefulbright.com

Re: WPEM, LLC v. SOTI Inc.

Bill:

As I have previously stated, the technology WPEM refers to as the "SOTI MobiControl," i.e., the "Accused Technology," was in use and publicly available before the priority date of U.S. Patent No. 9,148,762 (the "'762 Patent"). Specifically, Version 10 of the SOTI MobiControl, which included all Speed Lockdown functionality found in the current version of the SOTI MobilControl, was in use and publicly available before the priority date of the '762 Patent. This is clearly demonstrated by publicly-available information, some of which is provided herewith. As I have further explained, the only differences between Version 10 of the SOTI MobiControl and the current version of same are limited to very minor changes (i.e., patches and the like). Necessarily, then, to the extent WPEM alleges that the SOTI MobiControl includes the features of the claims of the '762 Patent, the SOTI MobiControl invalidates such claims.

WPEM's Complaint relies on portions of the MobiControl Help PDF to allege infringement of each claim of the '762 Patent. As we have discussed, the accused functionality of MobiControl (e.g., Speed Lockdown) has not substantively changed since Version 10, which was publicly released no later than January 7, 2013—four (4) months before the '762 Patent's priority date of May 9, 2013.

The following table lists each page of the MobiControl Help PDF cited in WPEM's Complaint as allegedly practicing each element of the '762 Patent, along with corresponding portions of the Version 10 manual *that demonstrate the same functionality*:

| **MOBICONTROL HELP PDF PAGES CITED IN WPEM'S COMPLAINT** | **VERSION 10 HELP MANUAL SHOWING SAME FUNCTIONALITY** |
|---|---|
| 685-687 | 01_MobiControl v10 speed lockdown.pdf |
| 110 | 02_MobiControl v10 location services.pdf |
| 674 | 03_MobiControl v10 application run control.pdf |

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.                    24741463.1

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

William P. Ramey, III
Ramey & Schwaller, LLP
August 27, 2018
Page 2

NORTON ROSE FULBRIGHT

| **MOBICONTROL HELP PDF PAGES CITED IN WPEM'S COMPLAINT** | **VERSION 10 HELP MANUAL SHOWING SAME FUNCTIONALITY** |
| --- | --- |
| 693 | 04_MobiControl v10 custom data variables.pdf |
| 698 | 05_MobiControl v10 phone call policy.pdf |
| 341 | 06_MobiControl v10 device relocation rules.pdf |
| 122 | 07_MobiControl v10 manage geofence.pdf |
| 696 | 08_MobiControl v10 device feature control.pdf |
| 1284 | 09_MobiControl v10 web console.pdf |

For your reference, the documents referenced in the foregoing table that describe the functionality of Version 10 of the MobiControl are attached hereto. The following documents, which further clarify this point, are also attached:

- MobiControl release notes demonstrating that Speed Lockdown was introduced in Version 10.0 Build 9329, *January 7, 2013* (10_2013-01-07_MobiControl Release Notes - SOTI.PDF); and
- Wayback machine capture *demonstrating MobiControl Version 10 was publicly available at least as early as January 16, 2013* (11_2013-01-16_V10_SOTI MobiControl - Mobile Device Management (MDM).pdf)

In view of the foregoing, from any reasonable view point, the Accused Technology predates the '762 Patent. As you know, FRCP 11 imposes an obligation on an attorney to (1) conduct a reasonable pre-suit investigation before alleging infringement; and (2) evaluate the reasonableness of claims of infringement in view of information discovered during litigation.

Therefore, under FRCP 11, (1) SOTI should not have been sued to begin with, and (2) WPEM must dismiss its claims of infringement. Refusing to do so strongly supports a claim SOTI may bring for sanctions under FRCP 11, attorneys' fees under 35 U.S.C. 285, and/or costs under 28 U.S.C. 1927.

Please let me know if you want to discuss by phone. Otherwise, I look forward to your response.

Very truly yours,

Robert Greeson

RLG

William P. Ramey, III                                    NORTON ROSE FULBRIGHT
Ramey & Schwaller, LLP
August 27, 2018
Page 3

Attachments:

01_MobiControl v10 speed lockdown.pdf
02_MobiControl v10 location services.pdf
03_MobiControl v10 application run control.pdf
04_MobiControl v10 custom data variables.pdf
05_MobiControl v10 phone call policy.pdf
06_MobiControl v10 device relocation rules.pdf
07_MobiControl v10 manage geofence.pdf
08_MobiControl v10 device feature control.pdf
09_MobiControl v10 web console.pdf
10_2013-01-07_MobiControl Release Notes - SOTI.PDF
11_2013-01-16_V10_SOTI MobiControl - Mobile Device Management (MDM).pdf

EXHIBIT 2

## Janitens, Erik

| | |
|---|---|
| **From:** | Janitens, Erik |
| **Sent:** | Monday, September 10, 2018 1:02 PM |
| **To:** | 'William Ramey'; Greeson, Robert |
| **Cc:** | Victoria Kubitskey; Harry Laxton; Joby Hughes |
| **Subject:** | RE: WPEM, LLC v. SOTI Inc. - FRE 408 Communication |

Bill –

The letter and attachments demonstrate that the technical details WPEM relies on in its infringement contentions (i.e., certain SOTI MobiControl Manual Version 14 pages) were disclosed prior to the patent priority date.  For each Version 14 manual page relied on to allege infringement, we've provided an identical page from the Version 10 manual showing the same functionality.  To the extent you think the Version 14 manual demonstrates infringement, the claims are necessarily invalidated by the Version 10 manual that predates the patent.  If you think this is insufficient to demonstrate that the functionality existed prior to the date of the patent, please let us know.  If you prefer, we can set up a call.

Thanks,
Erik

**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Thursday, September 6, 2018 8:19 PM
**To:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>; Greeson, Robert
<robert.greeson@nortonrosefulbright.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Joby Hughes
<jhughes@rameyfirm.com>
**Subject:** RE: WPEM, LLC v. SOTI Inc. - FRE 408 Communication

Erik,

We cannot see a working device.  I do not see a working embodiment?  Am I missing something?  I see very general statements.

That being said, we will keep discussing these issues with you.  When can we meet and discuss?

Bill

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
Tele. 713-426-3923
Direct. 832-581-4221
Fax 832-900-4941
Cell 713-857-6005
wramey@rameyfirm.com
www.rameyfirm.com

This communication may be privileged and may contain confidential information for the intended recipients. Any unauthorized copying or disclosure is not permitted. If you have received this communication in error, please notify us immediately and delete this communication from your mail box.

**From:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Sent:** Thursday, September 06, 2018 5:47 PM
**To:** William Ramey <wramey@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Subject:** RE: WPEM, LLC v. SOTI Inc. - FRE 408 Communication

Bill –

Following up with this—do you have a response?

Thanks,
Erik

**From:** Janitens, Erik
**Sent:** Monday, August 27, 2018 3:57 PM
**To:** 'William Ramey' <wramey@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Subject:** RE: WPEM, LLC v. SOTI Inc. - FRE 408 Communication

Bill –

Documents 10/11 demonstrate MobiControl v10 (w/ speed lockdown functionality shown in documents 1-9) was publicly available in January 2013.

Thanks,
Erik

**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Monday, August 27, 2018 2:04 PM
**To:** Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Cc:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Subject:** Re: WPEM, LLC v. SOTI Inc. - FRE 408 Communication

Are he dates apparently t from the documents?

We will review and get back with you.

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
(713) 426-3923
(832) 689-9175 (fax)
wramey@rameyfirm.com
www.rameyfirm.com

This email contains privileged and confidential information. If you are not the intended recipient please delete and notify the sender.

**From:** Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Sent:** Monday, August 27, 2018 11:34 AM
**To:** William Ramey
**Cc:** Janitens, Erik
**Subject:** WPEM, LLC v. SOTI Inc. - FRE 408 Communication

Bill –

Further to our prior discussions, the attached letter and accompanying documents demonstrate the Accused Technology was in use and publicly-available before the priority date of the Asserted Patent.

I look forward to your response.

Best,

--rg

**Robert Greeson** | Partner
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600, Dallas, Texas  75201-7932, United States
Tel +1 214 855 7430 | Fax +1 214 855 8200
robert.greeson@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

# EXHIBIT 3

## Janitens, Erik

| | |
|---|---|
| **From:** | Janitens, Erik |
| **Sent:** | Monday, October 15, 2018 9:26 AM |
| **To:** | 'Brett Crockett' |
| **Cc:** | 'Victoria Kubitskey'; 'Harry Laxton'; Greeson, Robert; 'Joby Hughes'; 'William Ramey' |
| **Subject:** | RE: WPEM / SOTI - mediator / prior art discussion |

Brett and Bill –

We are still waiting on a response.

-Erik

**From:** Janitens, Erik
**Sent:** Wednesday, October 10, 2018 3:30 PM
**To:** 'Brett Crockett' <bcrockett@rameyfirm.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>; Joby Hughes <jhughes@rameyfirm.com>; 'William Ramey' <wramey@rameyfirm.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

Brett –

Following up.

-Erik

**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Sunday, October 7, 2018 9:54 PM
**To:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>; Brett Crockett <bcrockett@rameyfirm.com>; Joby Hughes <jhughes@rameyfirm.com>
**Subject:** Re: WPEM / SOTI - mediator / prior art discussion

I am unavailable.  Check with brett

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
(713) 426-3923
(832) 689-9175 (fax)
wramey@rameyfirm.com
www.rameyfirm.com

This email contains privileged and confidential information. If you are not the intended recipient please delete and notify the sender.

**From:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Sent:** Monday, October 8, 2018 7:45 AM
**To:** William Ramey
**Cc:** Victoria Kubitskey; Harry Laxton; Greeson, Robert; Brett Crockett; Joby Hughes
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

Bill/Brett –

It's going on two weeks now. I see Brett downloaded the file last Tuesday. Do you have a response?

-Erik

**From:** Janitens, Erik
**Sent:** Tuesday, October 2, 2018 10:18 AM
**To:** 'William Ramey' <wramey@rameyfirm.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>; Brett Crockett <bcrockett@rameyfirm.com>; Joby Hughes <jhughes@rameyfirm.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

Bill –

Following up on this. I've sent along another link (separate email) since the link below expires today.

Thanks,
Erik

**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Tuesday, September 25, 2018 8:02 AM
**To:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>; Brett Crockett <bcrockett@rameyfirm.com>; Joby Hughes <jhughes@rameyfirm.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

Erik,

Thank you.

Bill

**From:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Sent:** Tuesday, September 25, 2018 6:23 AM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>; Brett Crockett <bcrockett@rameyfirm.com>; Joby Hughes <jhughes@rameyfirm.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

Bill –

The link is below.  Please use this installation key: BQD5U-T3M9P-AU9P3-Z5FWZ-PXK9M-FTA The activation will "fail" but will allow you a 30 day trial.

The attached PDF (with embedded video) demonstrates where the speed lockdown configuration can be found.

**Secure File Downloads:**
Available until: **02 October 2018**

Click link to download:

**MobiControl1000Setup_9160.zip**
391.38 MB

Thanks,
Erik

**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Tuesday, September 25, 2018 5:58 AM
**To:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>; Brett Crockett <bcrockett@rameyfirm.com>; Joby Hughes <jhughes@rameyfirm.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion
**Importance:** High

Erik,

We agree to treat as RESTRICTED CONFIDENTIAL AEO.

We cannot agree that it obviates testing but let us see what you have and we can discuss.

I have copied Joby and Brett from my firm.

Bill

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
Tele. 713-426-3923
Direct. 832-581-4221
Fax 832-900-4941
Cell 713-857-6005
wramey@rameyfirm.com
www.rameyfirm.com

This communication may be privileged and may contain confidential information for the intended recipients. Any unauthorized copying or disclosure is not permitted. If you have received this communication in error, please notify us immediately and delete this communication from your mail box.

**From:** Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Sent:** Thursday, September 20, 2018 4:32 PM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

Bill –

The relevant help pdf pages we previously provided demonstrate that Version 10 had the same speed lockdown functionality as Version 14. However, to eliminate any doubt, our client has agreed to provide the MobiControl Version 10 Build 9160 executable, i.e., the working product that was available on November 19, 2012 that contains speed lockdown functionality. This should obviate any need for "testing results." We will provide you with access to a link provided you agree to treat it as "RESTRICTED CONFIDENTIAL ATTORNEYS' EYES ONLY" pursuant to the Eastern District of Texas Sample Protective Order for Patent Cases until we are bound by a stipulated protective order in this case.

Thanks,
Erik



MobiControl1000Setup_9160.exe Properties                    ✕

General

| | MobiControl1000Setup_9160.exe |

| Type of file: | Application |
| Modified: | 11/19/2012 12:46 AM |

| Location: | (Archive Root Directory) |
| Size: | 402,209 KB |
| Compressed: | 400,777 KB |

| Method: | Deflated |
| CRC-32: | 67CB1E71 |
| Index: | 0 |

| Attributes: | Read-only | Hidden | System |

OK          Cancel



**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Wednesday, September 12, 2018 6:02 PM
**To:** Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion
**Importance:** High

Robert,

We will file the Notice of mediator listing Lee Kaplan.

As for the prior art, can you send us:

1. The manual from the time of the alleged inclusion of the feature?  We need to see the manuals from the relevant time-period showing the feature.
2. Also, we need the testing results from the newly added feature.  If the feature was added there will be testing accompanying the new product.

This should help bring us closer. Discovery starts shortly and we can draft formal requests but we think these are relevant to your defense so would need to be produced under the local rules.

Please let me know if you have any questions.

Bill

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
Tele. 713-426-3923
Direct. 832-581-4221
Fax 832-900-4941
Cell 713-857-6005
wramey@rameyfirm.com
www.rameyfirm.com

This communication may be privileged and may contain confidential information for the intended recipients. Any unauthorized copying or disclosure is not permitted. If you have received this communication in error, please notify us immediately and delete this communication from your mail box.

**From:** Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Sent:** Wednesday, September 12, 2018 5:47 PM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion

No objection.

Let me know if / when you'd like to discuss the prior art issue.  Thanks.

**From:** William Ramey [mailto:wramey@rameyfirm.com]
**Sent:** Wednesday, September 12, 2018 1:00 PM
**To:** Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Subject:** RE: WPEM / SOTI - mediator / prior art discussion
**Importance:** High

Robert,

It was a pleasure to meet you.  We propose Lee Kaplan.

His CV is at https://www.skv.com/attorneys/lee-l-kaplan.aspx.

Please let me know if you have any questions.

Bill

William P. Ramey, III
Ramey & Schwaller, LLP
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
Tele. 713-426-3923
Direct. 832-581-4221
Fax 832-900-4941

Cell 713-857-6005
wramey@rameyfirm.com
www.rameyfirm.com
This communication may be privileged and may contain confidential information for the intended recipients. Any unauthorized copying or disclosure is not permitted. If you have received this communication in error, please notify us immediately and delete this communication from your mail box.

**From:** Greeson, Robert <robert.greeson@nortonrosefulbright.com>
**Sent:** Wednesday, September 12, 2018 10:25 AM
**To:** William Ramey <wramey@rameyfirm.com>
**Cc:** Victoria Kubitskey <vkubitskey@rameyfirm.com>; Harry Laxton <hlaxton@rameyfirm.com>; Janitens, Erik <erik.janitens@nortonrosefulbright.com>
**Subject:** WPEM / SOTI - mediator / prior art discussion

Bill –

Good to speak with you yesterday.  Can you send me the name of the mediator you had in mind?

Also, please let me know when you'd like to discuss the prior art issue we talked about yesterday.

--Robert

**Robert Greeson** | Partner
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600, Dallas, Texas  75201-7932, United States
Tel +1 214 855 7430 | Fax +1 214 855 8200
robert.greeson@nortonrosefulbright.com

## NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

# EXHIBIT 4

## Janitens, Erik

| | |
|---|---|
| **From:** | bcrockett@rameyfirm.com |
| **Sent:** | Tuesday, October 2, 2018 4:01 PM |
| **To:** | Janitens, Erik |
| **Subject:** | Receipt Notification: MobiControl1000Setup_9160.zip RE: WPEM/SOTI  - MobiControl1000Setup_9160 |

**Your files have been received by bcrockett@rameyfirm.com**
**02 October 2018 15:54:44**

**Return Receipt:**
    File: **MobiControl1000Setup_9160.zip**
    File size: **391.38 MB**
    Downloaded at: **02 October 2018 15:54:44**
    Recipient: **bcrockett@rameyfirm.com**

Secured by Accellion

1

# EXHIBIT 5

**Janitens, Erik**

| | |
|---|---|
| **From:** | vkubitskey@rameyfirm.com |
| **Sent:** | Monday, October 8, 2018 10:22 AM |
| **To:** | Janitens, Erik |
| **Subject:** | Receipt Notification: MobiControl1000Setup_9160.zip RE: WPEM/SOTI  - |
| | MobiControl1000Setup_9160 |

**Your files have been received by vkubitskey@rameyfirm.com**
**08 October 2018 10:20:18**

**Return Receipt:**
    File: **MobiControl1000Setup_9160.zip**
    File size: **391.38 MB**
    Downloaded at: **08 October 2018 10:20:18**
    Recipient: **vkubitskey@rameyfirm.com**

Secured by Accellion

1

# EXHIBIT 6

**Invalidity of U.S. Patent No. 9,148,762 (the "'762 Patent) under 35 U.S.C. § 102 and/or § 103 by U.S. Patent Publication No. 2011/0264246 A1** [1]

U.S. Patent Publication No. 2011/0264246 A1 by Tina Pantoja and William Scott Taylor ("Pantoja '246") was published on October 27, 2011.  Pantoja '246 is therefore prior art to the '762 Patent under at least 35 U.S.C.  § 102(a).[2]

As described in the following claim chart, one or more claims of the '762 Patent are invalid as expressly and/or inherently anticipated by Pantoja '246.

In addition, to the extent that Pantoja '246 is found not to anticipate, expressly or inherently, one or more of the asserted claims of '762 Patent, these claims are invalid as obvious in view of Pantoja '246 alone or in combination with other prior art references, including but not limited to the prior art identified in SOTI's Invalidity Contentions and the prior art described in the claim charts attached in Appendix A.

SOTI reserves the right to amend or supplement this claim chart at a later date as more fully set forth in the Invalidity Contentions.

---

[1] The use of this reference or combinations of references as invalidating prior art under 35 U.S.C. §§ 102 and/or 103 may be based on WPEM's allegations of infringement.  SOTI does not necessarily agree with the interpretations set forth in WPEM's contentions and thus these invalidity contentions are not an admission that the accused products meet any particular claim element or infringe these claims.  Moreover, nothing in these contentions should be interpreted as an acquiescence to or assertion of a particular claim construction by SOTI.  In addition, nothing in these contentions should be interpreted as a position about whether any portion of the asserted claims is limiting or not.  Further, by submitting these invalidity contentions, SOTI does not waive and hereby expressly reserves its right to raise other invalidity defenses, including but not limited to defenses under 35 U.S.C. §§ 101 and 112.

[2] SOTI does not concede that WPEM is entitled to claim the benefit of Provisional Application No. 60/821,562 to show priority before the filing date of the '762 Patent.

*WPEM, LLC v. SOTI Inc. 2:18-cv-00156*
Invalidity of U.S. Patent No. 9,148,762 --- Appendix A Exhibit A-09

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| 1 | A method of wireless policy enforcement management of a mobile device having one or more wireless communication capabilities from the group consisting of data services and voice services, the method comprising: | **Abstract:**<br><br>A method and apparatus for providing a user of a mobile device, such as a cell phone, with applicable legal or safety information, such restrictions on the use of a cell phone, potential fines for cell phone use, potential dangers, personal protective equipment requirements, prohibitions, guidelines and the like, based on GPS position of the mobile device. A gaming aspect is incorporated as a method of incentivizing drivers to utilize the application by providing reward points uses the cell phone in a safe manner and consistent with applicable laws. Accrued points may be redeemed for gift cards or similar rewards. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | <br>Fig. 1 |
| I(a) | providing a software application for execution by the mobile device; | [0024]:<br><br>In a preferred embodiment, the invention is embodied in at least one SafeCell software application in combination with a hand held device, cell phone, smart phone (such as an iPhone®, Android® device or personal GPS unit), personal digital assistant ("PDA") (such as a Palm Pilot® or Blackberry® device), or tablet computer (such as the Motorola Galaxy®, or |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | iPad® devices) hereinafter simply referred to as a mobile device, and a computer server that communicates with the end-user SafeCell software application(s). [0051]: FIG. 1 illustrates a preferred embodiment of the invention, including a central server computer 14 in communication with a SafeCell software application residing in and executed by a cell phone, smart phone (such as an iPhone® or Android® device), or personal digital assistant ("PDA") (such as a Palm Pilot® or Blackberry® device), or tablet computer (such as the Motorola Galaxy®, or iPad® devices) hereinafter simply referred to as a mobile device client 12. Preferably, numerous mobile device clients 12 (each running a SafeCell application) are in combination with the central server computer 14. [0052]: The SafeCell application is preferably downloadable and installable on mobile devices directly from server computer 14 or another business web site. The SafeCell application includes step by step instructions for installation and setup, including preferences, and parental controls, for example. |
| 1(b) | pre-defining a first set of specific capabilities the mobile device will be able to run during a non-transit setting; | **[0030]** As part of the web based interface provided to users is the capability to have multiple "cell phone numbers" added to a primary account. An individual, manager, business, or parent will have the ability to monitor the usage of the mobile device(s) under their account. As part of primary accounts settings is the ability to predefine the time and/or locations that a mobile device has the ability to send text messages. The account holder can also set predefined geographical areas that the mobile device should be located. [0074] The SafeCell system provides for parental or company controls, including the ability for parents or companies to set default rules for the application. For example, parents may disable the user's ability to suspend, or interrupt, operation of the SafeCell application in order to place or receive calls, emails or text messages when in motion. Parents and companies have the ability to preload the application to new or existing phones, and application preferences have the ability to be |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | password protected. Parents and companies have the ability to preload the application with specific times that certain features of the phone are functional. Parents and companies have the ability to preload the application with predefined geographical areas that certain features of the mobile device will function along with notification if the mobile device leaves the pre-defined geographical area(s). FIG. 13 illustrates a signup screen 110. Signup screen 110 appears after the SafeCell application has been successfully downloaded to a mobile device. The subscriber inputs appropriate information into each of the fields. FIG. 14 illustrates an account management screen 120, in which multiple devices can be associated with a family account, for example. FIG. 15 illustrates a password entry screen 130 that may be used in conjunction with parental or company control. <br><br> [0052] <br><br> The SafeCell application is preferably downloadable and installable on mobile devices directly from server computer 14 or another business web site. The SafeCell application includes step by step instructions for installation and setup, including preferences, and parental controls, for example. <br><br> [0054]: <br><br> Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12. <br><br> [0023]: |

| Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|
| | The objects described above and other advantages and features of the invention are incorporated in a method and apparatus that provides positive, behavior-modifying reinforcement for deterring unsafe behaviors, including unsafe cell phone use, and in particular, text messaging ("texting"), while driving. In addition, other safety-related information, such as personal protective equipment requirements, prohibitions, or other pre-defined guidelines, may be provided to the user based on the user's location. |
| | **[0026]** |
| | The SafeCell application accesses a database containing all legal safety equipment, standards, processes, prohibitions or other guidelines that are searchable in terms of the locality in which the prohibition applies. The SafeCell application, based on mobile devices location as determined by GPS, displays the applicable legal and safety information, if any, for their location. For example, the SafeCell application determines if the user's mobile device is within a known school zone, and if so, the application provides a notification indicating that the user is entering a "No Cell Phone Zone" and displays the corresponding icon and or potential fine(s). Similarly, if the user's mobile device is located within a known hazardous area, the application provides a notification indicating that the user is entering such an area and displays the required safety equipment, standards, processes, prohibitions and other pre-defined guidelines. |
| | [0028]: |
| | According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | <br>Fig. 2B |
| 1(c) | pre-defining a second set of specific capabilities the mobile device will be able to run during an in-transit setting and storing such second set on a | [0027]:<br><br>When the SafeCell application is enabled (either manually prior to beginning the user's trip or automatically), any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | remote server as the mobile policy file; | for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |
| | | [0028]: |
| | | According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. |
| | | [0054]: |
| | | Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12. |
| | | [0058]: |
| | | When the SafeCell application is enabled, any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message (or for example, providing a status of "X" via Facebook or Twitter) to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit, as illustrated in FIG. 9. Once the SafeCell application has |

8

*WPEM, LLC v. SOTI Inc. 2:18-cv-00156*
**Invalidity of U.S. Patent No. 9,148,762 --- Appendix A Exhibit A-09**

| **Claim Language** | **U.S. Patent No. 2011/0264246 A1 ("Pantoja '246")** |
|---|---|
| | determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |
| | [0060]: |
| | According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. Additionally, for enterprise customers, reports may be available for download in excel or Adobe Acrobat file format for review and auditing of employees' adherence to the company's cell policies. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | <br>Fig. 2B |
| 1(d) | pre-defining a start trip speed in the software application; | [0058]<br><br>When the SafeCell application is enabled, any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message (or for example, providing a status of "X" via Facebook or Twitter) to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit, as illustrated in FIG. 9. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |
| | | [0060]: |
| | | According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. Additionally, for enterprise customers, reports may be available for download in excel or Adobe Acrobat file format for review and auditing of employees' adherence to the company's cell policies. |
| 1(e) | receiving and processing sensory data from the mobile device to determine when the mobile device meets or exceeds the pre-defined start trip speed; | [0054]:<br><br>Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12.<br><br>[0055]<br><br>Mobile device client 12 preferably employs cellular data connections (including GPRS, EDGE, 3G, 4G) and includes an onboard Global Positioning System ("GPS") receiver, which can provide position velocity, heading, altitude, starts, and stops information. Assisted GPS, which utilizes cell-tower-triangulation, Wi-Fi hotspot visibility, etc., to supplement GPS, privately |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | owned GP systems maintained by companies may also be used. The SafeCell application receives and processes input from the mobile device's GPS receiver and uses the GPS position, location, velocity, heading, altitude, starts, and stops information to log details about a user's trips. For mobile device's that include an accelerometer, accelerometer input may also be received and processed by the SafeCell application. |

[0058]

When the SafeCell application is enabled, any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message (or for example, providing a status of "X" via Facebook or Twitter) to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit, as illustrated in FIG. 9. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included.

[0063]:

FIG. 2B is a block diagram illustrating a domain or data model of database 15. Location data for all schools, for example, is cataloged at block 16. Federal, state, county and local cell phone restrictions and prohibitions, if any, in the form of statutes, regulations, or ordinances are cataloged at block 17. Together, this data is processed by server computer 14 so that applicable cell phone restrictions are pushed to all mobile device clients 12 based on their individual locations in real time. Subscriber account information is stored at block 18, and each user's trip details is stored at block 19.

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | <br>Fig. 2B |
| 1(f) | sending a signal to the remote server upon the mobile device meeting or exceeding the pre- | [0028]:<br><br>According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | defined start trip speed; | where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. |
| | | [0054]: |
| | | Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12. |
| | | [0058] |
| | | When the SafeCell application is enabled, any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message (or for example, providing a status of "X" via Facebook or Twitter) to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit, as illustrated in FIG. 9. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |

14

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | Fig. 1 |
| 1(g) | the remote server pushing the mobile policy file to the mobile device and temporarily overriding the non-transit setting; and | [0027] When the SafeCell application is enabled (either manually prior to beginning the user's trip or automatically), any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | when disabled due to transit. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included.<br><br>[0063]:<br><br>FIG. 2B is a block diagram illustrating a domain or data model of database 15. Location data for all schools, for example, is cataloged at block 16. Federal, state, county and local cell phone restrictions and prohibitions, if any, in the form of statutes, regulations, or ordinances are cataloged at block 17. Together, this data is processed by server computer 14 so that applicable cell phone restrictions are pushed to all mobile device clients 12 based on their individual locations in real time. Subscriber account information is stored at block 18, and each user's trip details is stored at block 19.<br><br>[0054]:<br><br>Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | |  Fig. 2B |

[0058]:

When the SafeCell application is enabled, any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message (or for example, providing a status of "X" via Facebook or Twitter) to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit, as illustrated in FIG. 9. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |
| | | [0060]: |
| | | According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. Additionally, for enterprise customers, reports may be available for download in excel or Adobe Acrobat file format for review and auditing of employees' adherence to the company's cell policies. |

*WPEM, LLC v. SOTI Inc. 2:18-cv-00156*
**Invalidity of U.S. Patent No. 9,148,762 --- Appendix A Exhibit A-09**

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | Fig. 1 |
| 1(h) | monitoring the user's interactions with the mobile device while in the in-transit setting. | [0054]:<br><br>Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward |

19

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12. |
| | | [0059]: |
| | | The SafeCell application logs the user's GPS location, speed, altitude, and heading. The SafeCell application can be enabled to provide other safety information prior to the user entering a predefined area in which protocols have been implemented that require specific safety equipment, standards, processes, prohibitions or other forms of pre-defined guidelines. In the event the user is entering into such an area, the SafeCell application provides the user with an automated message (for example, "Breathing Equipment Required From This Point On") based on a database that stores geo-specific safety information. |
| | | [0060]: |
| | | According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. Additionally, for enterprise customers, reports may be available for download in excel or Adobe Acrobat file format for review and auditing of employees' adherence to the company's cell policies. |
| | | [0064]: |
| | | FIG. 3 is a block level flow chart outlining a preferred implementation of the trip logic branch of FIG. 2A wherein the movements of mobile device client 12 are tracked Its operation is |

*WPEM, LLC v. SOTI Inc. 2:18-cv-00156*
Invalidity of U.S. Patent No. 9,148,762 --- Appendix A Exhibit A-09

| Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|
| | illustrated as follows: A user enters vehicle and launches the SafeCell application to start a new trip, or the SafeCell application starts automatically once the application determines that the device is moving at more than 4 miles per hour. The car starts in motion, meanwhile the mobile device client 12 collects data pertaining to accelerometer and GPS activity, current location, and time. The data is used to describe a summary of the trip for later review. Specifically, the SafeCell application tracks the following data during a trip: Current location (based on GPS or Assisted GPS), estimated speed (based on GPS or Assisted GPS averaged over time), date, time, distance traveled, latitude, longitude, and interruptions. Interruptions may be caused by a number of activities, most notably incoming phone calls and text messages. The user may quit the application. The user may also suspend the SafeCell application to use the phone. When the SafeCell application is resumed, it continues tracking the trip. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | <br><br>Fig. 3 |
| 2 | The method of claim 1, further comprising: | |
| 2(a) | determining when the trip is over; | [0054]:<br><br>Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12. [0055]: Mobile device client 12 preferably employs cellular data connections (including GPRS, EDGE, 3G, 4G) and includes an onboard Global Positioning System ("GPS") receiver, which can provide position velocity, heading, altitude, starts, and stops information. Assisted GPS, which utilizes cell-tower-triangulation, Wi-Fi hotspot visibility, etc., to supplement GPS, privately owned GP systems maintained by companies may also be used. The SafeCell application receives and processes input from the mobile device's GPS receiver and uses the GPS position, location, velocity, heading, altitude, starts, and stops information to log details about a user's trips. For mobile device's that include an accelerometer, accelerometer input may also be received and processed by the SafeCell application. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | <br>Fig. 2B |
| 2(b) | uploading the user trip data; and | [0069]:<br><br>At the end of the trip, if the game elements are enabled, the user is prompted by mobile device client 12 to name the trip (see FIG. 5) and to post it for scoring. The trip is saved to the device and uploaded to the server computer 14. Users earn points for long and/or repeated trips on which they safely leave the SafeCell application running the entire time. Interruptions to the SafeCell application reduce points.<br><br>[0055]: |

|  | **Claim Language** | **U.S. Patent No. 2011/0264246 A1 ("Pantoja '246")** |
|---|---|---|
|  |  | Mobile device client 12 preferably employs cellular data connections (including GPRS, EDGE, 3G, 4G) and includes an onboard Global Positioning System ("GPS") receiver, which can provide position velocity, heading, altitude, starts, and stops information. Assisted GPS, which utilizes cell-tower-triangulation, Wi-Fi hotspot visibility, etc., to supplement GPS, privately owned GP systems maintained by companies may also be used. The SafeCell application receives and processes input from the mobile device's GPS receiver and uses the GPS position, location, velocity, heading, altitude, starts, and stops information to log details about a user's trips. For mobile device's that include an accelerometer, accelerometer input may also be received and processed by the SafeCell application. |
| 2(c) | removing the mobile policy file and resuming the non-transit setting on the mobile device upon termination of the trip. | [0058]:<br><br>When the SafeCell application is enabled, any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message (or for example, providing a status of "X" via Facebook or Twitter) to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit, as illustrated in FIG. 9. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |
|  |  |  |
| 3 | The method of claim 1, further comprising: |  |
| 3(a) | determining a geographical location of the mobile device; and | [0055]:<br><br>Mobile device client 12 preferably employs cellular data connections (including GPRS, EDGE, 3G, 4G) and includes an onboard Global Positioning System ("GPS") receiver, which can provide position velocity, heading, altitude, starts, and stops information. Assisted GPS, which |

|  | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
|  |  | utilizes cell-tower-triangulation, Wi-Fi hotspot visibility, etc., to supplement GPS, privately owned GP systems maintained by companies may also be used. The SafeCell application receives and processes input from the mobile device's GPS receiver and uses the GPS position, location, velocity, heading, altitude, starts, and stops information to log details about a user's trips. For mobile device's that include an accelerometer, accelerometer input may also be received and processed by the SafeCell application. |
| 3(b) | wherein when it is determined that the mobile device initially meets or exceeds the pre-defined start trip speed, the software application accesses a database containing mobile device usage restrictions and guidelines for the geographic location of the mobile device. | [0060]: According to a default operation setting, the restricted "in transit" mode, which restricts text message, email, and telephone call functionality when traveling at speed, may be suspended at any time by the mobile device user. However, the ability to suspend the restricted "in transit" mode may be limited due to parental settings, if desired. The SafeCell application logs when and where its restricted "in transit" mode is suspended, the particular cell phone usage that occurs during these periods, such as whether text messaging or voice telephone calls are made, what speeds and accelerations occurred during the period, and what legal restrictions were in place at the time. These parameters are logged to a web based account hosted on a SafeCell server computer, which can be accessed and reviewed by parents and employers, for example. Such web based account may include a customized landing page for the users, if desired. Additionally, for enterprise customers, reports may be available for download in excel or Adobe Acrobat file format for review and auditing of employees' adherence to the company's cell policies. [0063]: FIG. 2B is a block diagram illustrating a domain or data model of database 15. Location data for all schools, for example, is cataloged at block 16. Federal, state, county and local cell phone restrictions and prohibitions, if any, in the form of statutes, regulations, or ordinances are cataloged at block 17. Together, this data is processed by server computer 14 so that applicable cell phone restrictions are pushed to all mobile device clients 12 based on their individual locations in real time. Subscriber account information is stored at block 18, and each user's trip details is stored at block 19. |

*WPEM, LLC v. SOTI Inc. 2:18-cv-00156*
**Invalidity of U.S. Patent No. 9,148,762 --- Appendix A Exhibit A-09**

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| 4 | The method of claim 3, | |
| 4(a) | wherein determining the geographical location of the mobile device includes using a Global Positioning System associated with the mobile device. | [0022]:<br><br>Another object of the invention is to provide a method and apparatus including a web-based application to tract a user's position, monitor safe driving, and inform the user when entering defined areas that have specific safety requirements.<br><br>[0026]:<br><br>The SafeCell application accesses a database containing all legal safety equipment, standards, processes, prohibitions or other guidelines that are searchable in terms of the locality in which the prohibition applies. The SafeCell application, based on mobile devices location as determined by GPS, displays the applicable legal and safety information, if any, for their location. For example, the SafeCell application determines if the user's mobile device is within a known school zone, and if so, the application provides a notification indicating that the user is entering a "No Cell Phone Zone" and displays the corresponding icon and or potential fine(s). Similarly, if the user's mobile device is located within a known hazardous area, the application provides a notification indicating that the user is entering such an area and displays the required safety equipment, standards, processes, prohibitions and other pre-defined guidelines. |
| 5 | The method of claim 3, | |
| 5(a) | wherein the database includes laws regarding cellular use within the geographic location. | [0018]:<br><br>Another object of the invention is to provide a method and apparatus that utilizes a reward program to encourage safe cell phone practice and adherence to laws.<br><br>[0020]:<br><br>Another object of the invention is to provide a method and apparatus that automatically informs the user of local laws and policies when the user enters neighborhoods, cities, counties, or states where cell phone usage prohibitions have been enacted, thus alerting the user of the potential legal consequences of driving while using a mobile communications device. |

|  | **Claim Language** | **U.S. Patent No. 2011/0264246 A1 ("Pantoja '246")** |
|---|---|---|
|  |  | [0026]:<br><br>The SafeCell application accesses a database containing all legal safety equipment, standards, processes, prohibitions or other guidelines that are searchable in terms of the locality in which the prohibition applies. The SafeCell application, based on mobile devices location as determined by GPS, displays the applicable legal and safety information, if any, for their location. For example, the SafeCell application determines if the user's mobile device is within a known school zone, and if so, the application provides a notification indicating that the user is entering a "No Cell Phone Zone" and displays the corresponding icon and or potential fine(s). Similarly, if the user's mobile device is located within a known hazardous area, the application provides a notification indicating that the user is entering such an area and displays the required safety equipment, standards, processes, prohibitions and other pre-defined guidelines.<br><br>[0063]:<br><br>FIG. 2B is a block diagram illustrating a domain or data model of database 15. Location data for all schools, for example, is cataloged at block 16. Federal, state, county and local cell phone restrictions and prohibitions, if any, in the form of statutes, regulations, or ordinances are cataloged at block 17. Together, this data is processed by server computer 14 so that applicable cell phone restrictions are pushed to all mobile device clients 12 based on their individual locations in real time. Subscriber account information is stored at block 18, and each user's trip details is stored at block 19. |
|  |  |  |
| 6 | The method of claim 5, |  |
| 6(a) | wherein the database includes cellular restrictions relating to schools. | [0026]:<br><br>The SafeCell application accesses a database containing all legal safety equipment, standards, processes, prohibitions or other guidelines that are searchable in terms of the locality in which the prohibition applies. The SafeCell application, based on mobile devices location as determined by GPS, displays the applicable legal and safety information, if any, for their location. For example, the SafeCell application determines if the user's mobile device is within a known school zone, and if so, the application provides a notification indicating that the user is |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | entering a "No Cell Phone Zone" and displays the corresponding icon and or potential fine(s). Similarly, if the user's mobile device is located within a known hazardous area, the application provides a notification indicating that the user is entering such an area and displays the required safety equipment, standards, processes, prohibitions and other pre-defined guidelines. |
| | | [0063]: |
| | | FIG. 2B is a block diagram illustrating a domain or data model of database 15. Location data for all schools, for example, is cataloged at block 16. Federal, state, county and local cell phone restrictions and prohibitions, if any, in the form of statutes, regulations, or ordinances are cataloged at block 17. Together, this data is processed by server computer 14 so that applicable cell phone restrictions are pushed to all mobile device clients 12 based on their individual locations in real time. Subscriber account information is stored at block 18, and each user's trip details is stored at block 19. |
| | | [0065]: |
| | | A tracking screen 20, such as that illustrated in FIG. 4, is visible during a trip. This screen serves as a visual reminder to not use the phone for SMS texting, email, or other activities such as entering a school zone. Additionally, the screen may provide prompts or subtle hints to the user that their current location has strict traffic laws around cell phone usage. For example, tracking screen 20 includes icons 21, 22 that represent the applicable cellular law(s) that are in place based on their real-time GPS location. These icons may include a school house icon for either being within 900 feet of a school or if there is a specific law for using a cellular device in a school zone, a text messaging bubble icon indicating there is a cellular law in place that prohibits texting, and/or a cell phone icon indicating that there is a cellular law in place that prohibits the use of a mobile device. Each of these icons are in a gray state unless the SafeCell application identifies that there is an applicable law in place for the users immediate GPS location. The icons turn red when a cell phone law or ordinance applies. Each change in appearance will be accompanied by an audible prompt of the corresponding law or ordinance indicating that there is a cell phone law in place. The user has the freedom to acknowledge the cell phone restriction notification and disable the texting function, for example, or to discard or disregard the prompt. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| 7 | The method of claim 3, further comprising: | |
| 7(a) | determining if the geographical location of the mobile device is within a geographical area of restricted use of the mobile device; and | [0065]:<br><br>A tracking screen 20, such as that illustrated in FIG. 4, is visible during a trip. This screen serves as a visual reminder to not use the phone for SMS texting, email, or other activities such as entering a school zone. Additionally, the screen may provide prompts or subtle hints to the user that their current location has strict traffic laws around cell phone usage. For example, tracking screen 20 includes icons 21, 22 that represent the applicable cellular law(s) that are in place based on their real-time GPS location. These icons may include a school house icon for either being within 900 feet of a school or if there is a specific law for using a cellular device in a school zone, a text messaging bubble icon indicating there is a cellular law in place that prohibits texting, and/or a cell phone icon indicating that there is a cellular law in place that prohibits the use of a mobile device. Each of these icons are in a gray state unless the SafeCell application identifies that there is an applicable law in place for the users immediate GPS location. The icons turn red when a cell phone law or ordinance applies. Each change in appearance will be accompanied by an audible prompt of the corresponding law or ordinance indicating that there is a cell phone law in place. The user has the freedom to acknowledge the cell phone restriction notification and disable the texting function, for example, or to discard or disregard the prompt. |
| 7(b) | restricting use of the mobile device based on the determination of whether the location of the mobile device is within a geographical area of restricted use. | [0065]:<br><br>A tracking screen 20, such as that illustrated in FIG. 4, is visible during a trip. This screen serves as a visual reminder to not use the phone for SMS texting, email, or other activities such as entering a school zone. Additionally, the screen may provide prompts or subtle hints to the user that their current location has strict traffic laws around cell phone usage. For example, tracking screen 20 includes icons 21, 22 that represent the applicable cellular law(s) that are in place based on their real-time GPS location. These icons may include a school house icon for either being within 900 feet of a school or if there is a specific law for using a cellular device in a school zone, a text messaging bubble icon indicating there is a cellular law in place that prohibits texting, and/or a cell phone icon indicating that there is a cellular law in place that prohibits the use of a mobile device. Each of these icons are in a gray state unless the SafeCell application |

| | **Claim Language** | **U.S. Patent No. 2011/0264246 A1 ("Pantoja '246")** |
|---|---|---|
| | | identifies that there is an applicable law in place for the users immediate GPS location. The icons turn red when a cell phone law or ordinance applies. Each change in appearance will be accompanied by an audible prompt of the corresponding law or ordinance indicating that there is a cell phone law in place. The user has the freedom to acknowledge the cell phone restriction notification and disable the texting function, for example, or to discard or disregard the prompt. |
| | | |
| 8 | The method of claim 7, further comprising | |
| 8(a) | not restricting use of the mobile device if the call is indicated to be an emergency call. | [0027]: |
| | | When the SafeCell application is enabled (either manually prior to beginning the user's trip or automatically), any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |
| | | [0066]: |
| | | Buttons 24, 26 to suspend and resume the SafeCell application are provided, and an Emergency button 28 to allow emergency calls is provided. Pressing Emergency Button 28 opens Emergency Screen 40, from which 911 or other preprogrammed numbers may be quickly dialed by a single selection. |
| | | |
| 9 | The method of claim 1, | |

| | **Claim Language** | **U.S. Patent No. 2011/0264246 A1 ("Pantoja '246")** |
|---|---|---|
| 9(a) | wherein the mobile device is one of a cellular telephone, a personal digital assistant, a pager, a portable computer, and a portable communication device. | [0051]:<br><br>FIG. 1 illustrates a preferred embodiment of the invention, including a central server computer 14 in communication with a SafeCell software application residing in and executed by a cell phone, smart phone (such as an iPhone® or Android® device), or personal digital assistant ("PDA") (such as a Palm Pilot® or Blackberry® device), or tablet computer (such as the Motorola Galaxy®, or iPad® devices) hereinafter simply referred to as a mobile device client 12. Preferably, numerous mobile device clients 12 (each running a SafeCell application) are in combination with the central server computer 14. |
| | | |
| 10 | The method of claim 1, further comprising | |
| 10(a) | enrolling the mobile device in the management system. | [0074]:<br><br>The SafeCell system provides for parental or company controls, including the ability for parents or companies to set default rules for the application. For example, parents may disable the user's ability to suspend, or interrupt, operation of the SafeCell application in order to place or receive calls, emails or text messages when in motion. Parents and companies have the ability to preload the application to new or existing phones, and application preferences have the ability to be password protected. Parents and companies have the ability to preload the application with specific times that certain features of the phone are functional. Parents and companies have the ability to preload the application with pre-defined geographical areas that certain features of the mobile device will function along with notification if the mobile device leaves the pre-defined geographical area(s). FIG. 13 illustrates a signup screen 110. Signup screen 110 appears after the SafeCell application has been successfully downloaded to a mobile device. The subscriber inputs appropriate information into each of the fields. FIG. 14 illustrates an account management screen 120, in which multiple devices can be associated with a family account, for example. FIG. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | | 15 illustrates a password entry screen 130 that may be used in conjunction with parental or company control. |
| 11 | The method of claim 10, further comprising | |
| 11(a) | allowing the management system to fully scan and document all hardware related information of the mobile device, all software installed on the mobile device, security settings, all third party software loaded to the mobile device, and all system settings of the mobile device. | [0054]:<br><br>Server computer 14 receives and collect data from mobile device client 12, including trip details (location, velocity, heading, altitude, starts and stops) and mobile device usage details. Server computer 14 manages family and enterprise account settings, including the calculation of reward points. Finally, server computer 14 includes one or more of databases 15, from which it provides information to the end users regarding the relevant laws, ordinances, prohibitions, legal, safety equipment, standards, processes, prohibitions and other forms of pre-defined guidelines (hereinafter simply "cell phone usage rules or guidelines") for the user based on the location of the mobile device client 12.<br><br>[0027]:<br><br>When the SafeCell application is enabled (either manually prior to beginning the user's trip or automatically), any time vehicle is moving more than 4 miles per hour, the application disables text message, email, and telephone call functionality, responding to incoming communications with an automated message to let those others know that the user is temporarily unavailable because in transit. The SafeCell application logs text messages, email, and calls that were missed when disabled due to transit. Once the SafeCell application has determined that motion has ceased, text messaging, email, and telephone functions are automatically re-enabled. In this "in transit" restricted-use mode, the SafeCell application includes an emergency override capability for 911 and up to three other emergency contact numbers, such as parents, employer, etc. A passenger-use override capability may also be included. |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| 12 | A method for remotely applying pre-defined policies to a mobile device on the basis of the speed the mobile device is travelling, comprising: | *See* 1 |
| 12(a) | enrolling the mobile device in the system; | *See* 10, 10(a) |
| 12(b) | providing a software application for execution by the mobile device, the mobile device characterized by having one or more wireless communication capabilities from the group consisting of data services and voice services and associated with a navigation component that | *See* 1, 1(a) |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | provides navigation data; | |
| 12(c) | pre-defining a first set of specific capabilities the mobile device will be able to run during a non-transit setting and storing such first set on a server as the user's non-motion policy file; | *See* 1(b) |
| 12(d) | pre-defining a second set of specific capabilities the mobile device will be able to run during an in-transit setting and storing such second set on the server as the user's mobile policy file; | *See* 1(c) |
| 12(e) | upon determining the mobile device is travelling at or | *See* 1(d)-(e) |

| | Claim Language | U.S. Patent No. 2011/0264246 A1 ("Pantoja '246") |
|---|---|---|
| | above a pre-configured start trip speed, | |
| 12(f) | pushing the user's mobile policy file to the mobile device and temporarily overwriting user's non-motion policy file; and | *See* 1(g) |
| 12(g) | monitoring the user's interactions with the mobile device while in the in-transit setting; and | *See* 1(h) |
| 12(h) | gathering hardware and software sensory data including GPS, accelerometer, and hardware unique data elements while in the in-transit setting. | *See* 1(e) |

|  | **Claim Language** | **U.S. Patent No. 2011/0264246 A1 ("Pantoja '246")** |
|---|---|---|
| 13 | The method of claim 12, further comprising |  |
| 13(a) | upon determining a trip is over, the provided software application will upload the user trip data to a remote user's account. | *See* 2(a)-(b) |
|  |  |  |
| 14 | The method of claim 13, |  |
| 14(a) | wherein the user trip data includes all violations, accelerometer and device sensor telemetry. | *See* 12(h)<br><br>[0055]:<br><br>Mobile device client 12 preferably employs cellular data connections (including GPRS, EDGE, 3G, 4G) and includes an onboard Global Positioning System ("GPS") receiver, which can provide position velocity, heading, altitude, starts, and stops information. Assisted GPS, which utilizes cell-tower-triangulation, Wi-Fi hotspot visibility, etc., to supplement GPS, privately owned GP systems maintained by companies may also be used. The SafeCell application receives and processes input from the mobile device's GPS receiver and uses the GPS position, location, velocity, heading, altitude, starts, and stops information to log details about a user's trips. For mobile device's that include an accelerometer, accelerometer input may also be received and processed by the SafeCell application. |