# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| WPEM, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 2:18-CV-00156 |
| v. | ) | |
| | ) | |
| | ) | |
| SOTI, INC. | ) | JURY TRIAL DEMANDED |
|     Defendant. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEFING ADDRESSING PLAINTIFF'S PRESUIT DILIGENCE IN RESPONSE TO DEFENDANT SOTI INC.'S "MOTION TO RECOVER ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285"[1] AND REQUEST FOR FEES FOR ADDRESSING THIS BASELESS MOTION**

---

[1] Defendant SOTI, Inc.'s Motion is ECF No. 39 ("Motion").

Plaintiff WPEM, LLC submits, supplemental briefing solely on the issue of WPEM, LLC's pre-suit investigation and knowledge before filing suit, specifically providing that no one associated with WPEM, including specifically, but not limited to, Mr. Taylor, Ms. Pantoja, Mr. Hughes or anyone at the law firm of Ramey & Schwaller, LLP had knowledge of any prior version of SOTI Inc.'s MobiControl Mobile Device management software.

### I. NO ONE ASSOCIATED WITH WPEM HAD KNOWLEDGE OF ANY PRIOR VERSION OF SOTI INC.'S MOBICONTROL.

#### A. There was no pre-suit knowledge that SOTI Inc.'s prior versions of MobiControl had speed lockdown functionality.

Defendant SOTI Inc.'s motion is an attempt to upend patent law and create entirely new obligations on a plaintiff for a pre-suit investigation, in essence destroying the presumption of validity, thereby denying access to the courts. Here, neither WPEM or anyone associated with it, or its predecessor W2W, LLC had pre-suit knowledge that SOTI had a prior version of MobiControl with the speed lockdown functionality.[2] Relying on the presumption of validity and lack of knowledge of any potentially invalidating prior art, WPEM's pre-suit diligence focused primarily on the creation of detailed infringement charts which became Plaintiff's infringement contentions.[3] More shocking, SOTI has no evidence of an improper pre-suit investigation, but rather is engaged in a fishing expedition, attempting to manufacture a basis for an exceptional case when there is none. As such, SOTI had no basis for filing its motion for fees and Plaintiff is entitled to its fees for responding to this baseless motion.

---

[2] *See* Declaration of William Scott Taylor at ¶s 3, 4, 9, 11-14; Declaration of Joby A. Hughes at ¶s 6,7; Declaration of William P. Ramey, III at ¶s 11, 12.

[3] *See* Declaration of William P. Ramey, III at ¶5.

### B. WPEM's pre-suit diligence was reasonable and proper.

Mr. Taylor and Ms. Pantoja first became aware of the functionality of SOTI Inc.'s "MobiControl" solution in early December 2017 from reviewing the SOTI Manual "MCHelp.pdf" from the Internet. A true and correct copy of the cover page of the SOTI Manual he downloaded is attached as Exhibit A to Mr. Taylor's declaration. He came upon the SOTI Manual while browsing the Internet for mobile device management solutions.[4]

After reviewing the SOTI Manual and the capabilities beginning on page 677 detailing the lockdown of a mobile device once a predefined speed is reached, a core feature of his mobile application SafeCell™ from which the '762 patent evolved, he decided to seek legal help. Prior to December of 2017, both Mr. Taylor and Ms. Pantoja were unaware of the full functionality of SOTI Inc.'s MobiControl. Specifically, prior to December of 2017, neither of them were aware that SOTI Inc.'s MobiControl had speed lockdown functionality.[5]

Mr. Taylor first approached William Ramey of Ramey & Schwaller on December 20, 2017 to discuss a potential patent infringement case. Mr. Ramey asked Mr. Taylor to explain to him why he believed there was infringement. Mr. Taylor told him he would work on it.[6]

Mr. Taylor reached back out to the Ramey-Schwaller Law firm in January of 2018 to discuss the potential patent infringement and why he believed there was infringement. After several phone calls, an in-person meeting was held in February of 2018 with Mr. Taylor, lawyers from Ramey & Schwaller, LLP and Joby Hughes. The phone calls included discussions of the

---

[4] *See* Declaration of William Scott Taylor at ¶3.
[5] *See* Declaration of William Scott Taylor at ¶4.
[6] *See* Declaration of William Scott Taylor at ¶5.

technology and its background, as well as a preliminary chart showing features from the SOTI product that Mr. Taylor believed corresponded to elements from the claims of the '762 patent.[7]

At the meeting, Mr. Ramey asked Mr. Taylor how the technology was developed and for whom. He also wanted to know why Mr. Taylor was not commercializing his technology. Mr. Taylor explained to him that he previously tried to commercialize it but was not successful and that he was forced to seek work outside of the area of technology claimed by the '762 patent. From the third quarter of 2015 to December of 2017 Mr. Taylor was not focused on Mobile Device Management Solutions and Mr. Taylor had lost track of the development of the technology.[8]

At the in-person meeting, Mr. Taylor entered into an agreement with Ramey & Schwaller for representation in the potential patent infringement case asserting the claims of the '762 patent.

Beginning in February of 2018, Mr. Taylor, working with Mr. Hughes and Mr. Ramey, began the development of a detailed claim chart based on my earlier preliminary chart showing the functionality in the SOTI MobiControl solution to the claims in the '762 patent. This claim chart was developed by mapping the claims in the '762 patent to the previously downloaded version of the SOTI MobiControl User Manual. Upon information and belief, Version 11 was downloaded. At the time, Mr. Taylor, Mr. Hughes and everyone at the law firm of Ramey & Schwaller, LLP were unaware there were any other versions of SOTI's MobiControl.[9]

In order to ensure clean title to the '762 patent, Mr. Taylor was advised to create WPEM, LLC for holding the '762 patent. He filed the paperwork to establish WPEM, LLC with the State

---

[7] *See* Declaration of William Scott Taylor at ¶6.
[8] *See* Declaration of William Scott Taylor at ¶7.
[9] *See* Declaration of William Scott Taylor at ¶9.

of Texas on April 4, 2018. Mrs. Pantoja and he are the primary officers and Joby Hughes was named as VP of Legal Affairs.[10]

On August 17, 2018 Mr. Taylor received an email from Mr. Ramey stating that he had been told by SOTI's counsel that they were claiming to have prior art invalidating the claims of the '762 patent. He stated that he was concerned with the supposed prior invention but, they had not provided any documentation of it. He recommended that we make a settlement offer of no less than $375,000.00 due to the case being young.[11]

On September 25, 2018, Mr. Taylor received an email from Mr. Ramey that included an email from Erik Janitens showing a screen shot of a MobiControl Version 10 Build 9160 executable. The screen shot showed the speed control functionality included. Mr. Taylor exclaimed to Mr. Ramey that he had never seen any reference to a Version 10 prior to this e-mail.[12] Mr. Ramey also provided Mr. Taylor with the reference to SOTI's MobiControl release notes dated January 13, 2013 in which the speed control was included. Mr. Taylor had not seen the release notes prior to September 25, 2018.[13]

On September 27, 2018 Mr. Taylor received an email from Mr. Ramey that the firm was conducting a full analysis of the SOTI alleged product release, including some information that Mr. Ramey could not share with Mr. Taylor.[14]

On October 24, 2018 Mr. Taylor received an email from Mr. Ramey that SOTI had declined his offer of $75,000.00 to settle all claims. In the same email Mr. Ramey stated that he had concerns about the validity of the patent and he suggested a full nonsuit. He reiterated that the patent had a

---

[10] *See* Declaration of William Scott Taylor at ¶10.
[11] *See* Declaration of William Scott Taylor at ¶11.
[12] *See* Declaration of William P. Ramey, III at ¶13.
[13] *See* Declaration of William Scott Taylor at ¶12.
[14] *See* Declaration of William Scott Taylor at ¶13.

5

presumption of validity but in light of the identified unknown prior art it would be a fight to maintain validity. Mr. Ramey stated he was going to try an negotiate a full release from SOTI for the dismissal and requested my authorization to proceed. Mr. Taylor agreed to the dismissal.[15]

Prior to September 25, 2019, Mr. Taylor, Ms. Pantoja, Mr. Hughes and everyone at Ramey & Schwaller, LLP were unaware of the of the January 13, 2013 release notes concerning the SpeedLock Down features of SOTI's MobiControl Version 10.[16] However, Mr. Taylor was very aware of SOTI, Inc. as they were a Mobile Device Management (MDM) solution provider that AT&T resold. In 2012, to the best of his knowledge SOTI did not have a distracted driving solution to offer to the users of the MobiControl solution. He was confident of this due to the non-exclusive license arrangement that one of my companies had with AT&T for his company's product SafeCell™. AT&T requested SafeCell™ to work with one of their customers that was currently using the MobiControl MDM solution to implement/deploy our SafeCell™ distracted driving mobile application through a proof of concept (POC). The POC occurred over the summer and into the fall of 2012. At that time MobiControl could not provide a solution to lockdown a mobile device when a predefined speed was reached. The SafeCell™ distracted driving application provided that functionality.[17]

It was further Mr. Taylor's understanding that SOTI was not working on any solution to address distracted driving for the MobiControl solution at the time he was working with AT&T and their client on the SafeCell™ POC. In retrospect, he does not know if SOTI took what they

---

[15] *See* Declaration of William Scott Taylor at ¶14.
[16] *See* Declaration of William Scott Taylor at ¶12; Declaration of Joby A. Hughes at ¶s 6,7; Declaration of William P. Ramey, III at ¶6.
[17] *See* Declaration of William Scott Taylor at ¶15.

learned from the extensive functionalities demonstrated during the AT&T POC to begin the development of their version 10.[18]

Mr. Taylor had no knowledge that SOTI's MobiControl had speed lockdown functionality in January of 2013. His understanding was that the SafeCell™ product that he launched was the first and only distracted driving application for the iPhone and Android mobile devices that would lock out features of the mobile devices when the predefined speed was met. His first generation SafeCell™ product was the subject of a patent application that he later abandoned in favor of the application that matured into the '762 patent.[19]

He had been developing an improved SafeCell™ product for over a year before he was approached by AT&T, Inc. in early 2012 to work on the POC to fully integrate a Telematics application for the trucking industry. He filed a patent application on the WPEM product in May of 2013 that issued as the '762 patent. The concept for the WPEM product was completed in the fall of 2012 and the final WPEM product development was completed in early 2013. A patent application was not filed until May of 2013 but could have been filed in the fall of 2012.[20] After the POC and the third quarter of 2015, AT&T did not move forward with Mr. Taylor's SafeCell™ product.[21]

## II.  § 285 AWARDS SHOULD BE RESERVED FOR RARE AND UNUSUAL CIRCUMSTANCES.

"[A]wards of attorney's fees in patent cases should be reserved for rare and unusual circumstances, as the [Supreme] Court explained. *See [Octane Fitness] at 1756* ('In 1952, when

---

[18] *See* Declaration of William Scott Taylor at ¶16.
[19] *See* Declaration of William Scott Taylor at ¶17.
[20] *See* Declaration of William Scott Taylor at ¶18.
[21] *See* Declaration of William Scott Taylor at ¶19.

Congress used the word in *§ 285* . . . ''[e]xceptional' meant uncommon, rare, or not ordinary.''[22] "[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith."[23]

### III.  PLAINTIFF'S PRESUIT INVESTIGATION WAS ADEQUATE

Plaintiff's pre-suit investigation focused on detailed claim charts[24] was reasonable and the lawsuit that was filed was not frivolous or filed in bad faith[25] and the '762 patent is presumed valid.[26]  Further, SOTI Inc.'s corporate representative testified that there was not a pdf version of Version 10 of MobiControl,[27] but Version 10 would have been available as HTML.[28]  Thus, there was not a pdf version of Version 10 for Plaintiff to find.  While SOTI's corporate representative testified that it would have been as easy to locate the Version 10 HTML, that is not what happened as neither Mr. Taylor, Ms. Pantoja, Mr. Hughes, or anyone at Ramey & Schwaller, LLP was aware of Version 10 until at least August 27, 2018, when release notes were sent by SOTI's counsel to counsel for Plaintiff.[29]

After becoming aware of Version 10 release notes on *August* 27, 2018, a motion to dismiss was filed within 2 months.  Over one-half of the delay in dismissal from that point was due to SOTI's slow release of the proof that its Version 10 had the functionality it claimed.  Plaintiff did not receive proof of the functionality until September 25, 2018.[30]  Even SOTI's counsel agreed it would not dismiss a case until it had the proof.[31]

---

[22] *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080, at *10 (E.D. Tex. Aug. 6, 2014).
[23] *Stragent*, 2014 U.S. Dist. LEXIS 169080, at *12; *accord Octane Fitness*, 134 S. Ct. at 1753 (noting that, under the prior statute, courts did not award fees as a penalty for failing to win and indicating that the statute's recodification into § 285 did not substantively change the statue).
[24] *See* Declaration of William P. Ramey, III at ¶5.
[25] *See* Declaration of William Scott Taylor at ¶s 3, 4, 9, 11-14; Declaration of Joby A. Hughes at ¶s 6,7; Declaration of William P. Ramey, III at ¶s 11, 12.
[26] *See* 35 U.S.C. §282.
[27] *See* Hearing Transcript at page 18, lines 21-22 ("18:21-22") (attached as Exhibit E).
[28] *See* Hearing Transcript at 17:19-18:1.
[29] *See* Declaration of William Scott Taylor at ¶s 3, 4, 9, 11-14; Declaration of Joby A. Hughes at ¶s 6,7; Declaration of William P. Ramey, III at ¶s 11, 12.
[30] *See* Declaration of William P. Ramey, III at ¶14.
[31] *See* Hearing Transcript at 74:8-13.

Taking all the facts of the pre-suit investigation of infringement, the presumption of validity, the lack of knowledge of anyone associated with WPEM, LLC of the potentially invalidating prior art, there simply is nothing frivolous about this lawsuit and all actions were reasonable.

### IV.   SOTI HAS PRODUCED NO BASIS FOR ITS MOTION TO FIND THE CASE EXCEPTIONAL

SOTI did not have a good faith basis for filing its motion to have the case found exceptional and therefore should be sanctioned in the amount of WPEM's fees expended in responding. The lead attorney, William P. Ramey, III has incurred more than 50 hours in responding the motion, travel to the hearing, witness preparation, hearing preparation, and this supplemental brief.[32]  Mr. Ramey's hourly rate is $525 per hour and reasonable.[33]  Accordingly, WPEM requests a sanction of $26,250.00 from SOTI. Such amount is reasonable given that SOTI has spent over $200,000.00 pursuing its motion for fees, after the filing of SOTI's Motion to Dismiss, not accounting for the hearing time.[34]  Here, SOTI's counsel has charged three times what it cost to defend the case on its motion for fees and has produced no evidence to support its allegations. Such a fishing expedition should be sanctioned as it increases the risk of denying access to the court house for plaintiffs.

Fees are justified as SOTI has not produced any evidence warranting an exceptional case finding.

### V.   CONCLUSION

For the same reasons discussed above, SOTI's Motion should be denied and SOTI should be sanctioned in at least the amount t of $26,250.00.

---

[32] *See* Declaration of William P. Ramey, III at ¶20.
[33] *See* Declaration of William P. Ramey, III at ¶20.
[34] *See* Hearing Transcript at 79:8-17.

        Respectfully submitted,
        **Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
    William P. Ramey, III
    Texas Bar No. 24027643
    5020 Montrose Blvd., Suite 750
    Houston, Texas 77006
    (713) 426-3923 (telephone)
    (832) 900-4941 (fax)
    wramey@rameyfirm.com

***Attorneys for WPEM, LLC***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, December 3, 2019, with a copy of the foregoing via the Court's CM/ECF system.

        /s/ William P. Ramey, III
        William P. Ramey, III