UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WPEM, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 2:18-CV-00156 |
| v. | ) | |
| | ) | |
| SOTI, INC. | ) | JURY TRIAL DEMANDED |
|     Defendant. | ) | |

## DECLARATION OF WILLIAM S. TAYLOR

Pursuant to 28 U.S.C. § 1746, I, William S. Taylor, declare as follows:

1. My name is William S. Taylor. I am over the age of 21. I have never been convicted of a felony, and I have personal knowledge of the facts contained herein, which are true and correct. I am fully qualified and competent to make this Declaration. If called as a witness, I could competently testify to these statements.

2. I am one of the two owners of WPEM LLC, located in Houston, Texas. The other owner is Ms. Tina Pantoja. We also were co-owners, with no other owner, of W2W, LLC, a predecessor entity. WPEM is the Plaintiff in the above-styled patent infringement lawsuit alleging infringement of United States Patent No. 9,148,762 ("the '762 patent") related to mobile device management. The '762 patent issued on September 29, 2015 listing me, William S. Taylor, as the sole inventor.

3. I and Ms. Pantoja first became aware of the functionality of SOTI Inc.'s "MobiControl" solution in early December 2017 from reviewing the SOTI Manual "MCHelp.pdf" from the Internet. A true and correct copy of the cover page of the SOTI Manual I downloaded as a pdf is attached as Exhibit A to my declaration. I came upon the SOTI Manual while browsing the Internet for mobile device management solutions.

4.      After reviewing the SOTI Manual and the capabilities beginning on page 677 detailing the lockdown of a mobile device once a predefined speed is been reached, a core feature of my mobile application SafeCell™ from which the '762 patent evolved, I decided to seek legal help as I believed this infringed the claims of the '762 patent. Prior to December of 2017, both I and Ms. Pantoja were unaware of the full functionality of SOTI Inc.'s MobiControl.  Specifically, prior to December of 2017, neither of us were aware that SOTI Inc.'s MobiControl had speed lockdown functionality.

5.      I first approached William Ramey of Ramey & Schwaller on December 20, 2017 to discuss a potential patent infringement case.  Mr. Ramey asked me to explain to him why I believed there was infringement.  I told him I would work on it.

6.      I reached back out to the Ramey-Schwaller Law firm in January of 2018 to discuss the potential patent infringement and why I believed there was infringement. After several phone calls, an in-person meeting was held in February of 2018 with me, lawyers from Ramey & Schwaller, LLP and Joby Hughes.  The phone calls included discussions of the technology and its background, as well as a preliminary chart showing features from the SOTI product that I believed corresponded to elements from the claims of the '762 patent.

7.      At the meeting, Mr. Ramey asked me how the technology was developed and for whom.  He also wanted to know why I was not commercializing my technology.  I explained to him that I previously tried to commercialize it but was not successful and that I was forced to seek work outside of the area of technology claimed by the '762 patent.  From the third quarter of 2015 to December of 2017 I was not focused on Mobile Device Management Solutions and I had lost track of the development of the technology.

8. At the in-person meeting, I entered into an agreement with Ramey & Schwaller for representation in the potential patent infringement case asserting the claims of the '762 patent.

9. Beginning in February of 2018, I, working with Mr. Hughes and Mr. Ramey, began the development of a detailed claim chart based on my earlier preliminary chart showing the functionality in the SOTI MobiControl solution to the claims in patent '762 at Mr. Ramey's request. This claim chart was developed by mapping the claims in the '762 patent to the previously downloaded version of the SOTI MobiControl User Manual. I now understand that Version 11 was downloaded. I was unaware there were any other versions and I did not see any other versions on SOTI's website.

10. In order to ensure clean title to the '762 patent, we were advised to create WPEM, LLC for holding the '762 patent. I filed the paperwork to establish WPEM, LLC with the State of Texas on April 4, 2018. Mrs. Pantoja and I are the primary officers and Joby Hughes was named as VP of Legal Affairs.

11. On August 17, 2018 I received an email from Mr. Ramey stating that he had been told by SOTI's counsel that they were claiming to have prior art invalidating the claims of the '762 patent. He stated that he was concerned with the supposed prior invention but, they had not provided any documentation of it. He recommended that we make a settlement offer of no less than $375,000.00 due to the case being young. Based on Mr. Ramey's input and knowledge, I responded that I agreed.

12. On September 25, 2018, I received an email from Mr. Ramey that included an email from Erik Janitens showing a screen shot of a MobiControl Version 10 Build 9160 executable. The screen shot showed the speed control functionality included. I had never seen any reference to a Version 10 prior to this e-mail. Mr. Ramey also provided me with the reference to

SOTI's MobiControl release notes dated January 13, 2013 in which the speed control was included. I had not seen the release notes prior to September 25, 2018.

13. On September 27, 2018 I received an email from Mr. Ramey that the firm was conducting a full analysis of the SOTI alleged product release, including some information that Mr. Ramey could not share with me.

14. On October 24, 2018 I received an email from Mr. Ramey that SOTI had declined his offer of $75,000.00 to settle all claims. In the same email Mr. Ramey stated that he had concerns about the validity of the patent and he suggested a full nonsuit. He reiterated that the patent had a presumption of validity but in light of the identified unknown prior art it would be a fight to maintain validity. Mr. Ramey stated he was going to try an negotiate a full release from SOTI for the dismissal and requested my authorization to proceed. I agreed to the dismissal.

15. Prior to September 25, 2019, I was unaware of the of the January 13, 2013 release notes concerning the SpeedLock Down features of SOTI's MobiControl Version 10. However, I was very aware of SOTI, Inc. as they were a Mobile Device Management (MDM) solution provider that AT&T resold. In 2012, to the best of my knowledge SOTI did not have a distracted driving solution to offer to the users of the MobiControl solution. I am confident of this due to the non-exclusive license arrangement that one of my companies had with AT&T for my company's product SafeCell™. AT&T requested SafeCell™ to work with one of their customers that was currently using the MobiControl MDM solution to implement/deploy our SafeCell™ distracted driving mobile application through a proof of concept (POC). The POC occurred over the summer and into the fall of 2012. At that time MobiControl could not provide a solution to lockdown a mobile device when a predefined speed was reached. The SafeCell™ distracted driving application provided that functionality.

16.     It was further my understanding that SOTI was not working on any solution to address distracted driving for the MobiControl solution at the time we were working with AT&T and their client on the SafeCell™ POC.  In retrospect, I do not know if SOTI took what they learned from our extensive functionalities demonstrated during the AT&T POC to begin the development of their version 10.

17.     I had no knowledge that SOTI's MobiControl had speed lockdown functionality in January of 2013.  My understanding was that the SafeCell™ product that I launched was the first and only distracted driving application for the iPhone and Android mobile devices that would lock out features of the mobile devices when the predefined speed was met.  My first generation SafeCell™ product was the subject of a patent application that I later abandoned in favor of the application that matured into the '762 patent.

18.     I had been developing an improved SafeCell™ product, for over a year before we were approached by AT&T, Inc. in early 2012 to work on the POC to fully integrate a Telematics application for the trucking industry.  I filed a patent application on the WPEM product in May of 2013 that issued as the '762 patent.  The concept for the WPEM product was completed in the fall of 2012 and the final WPEM product development was completed in early 2013.  A patent application was not filed until May of 2013 but could have been filed in the fall of 2012.

19.     We conducted multiple tests with various AT&T customers after the first POC with the AT&T customer utilizing the SOTI MDM, enhancements/developments were made to the SafeCell™ product for AT&T until the third quarter of 2015, at which point we terminated our license arrangement with AT&T.

20.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Harris County, State of Texas,
on December 3, 2019.

_____
William S. Taylor, DECLARANT