## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| WPEM, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:18-CV-00156-JRG |
| | § | |
| SOTI INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant SOTI Inc.'s ("SOTI") Motion to Recover Attorneys' Fees Pursuant to 35 U.S.C. § 285 (the "Motion"). (Dkt. No. 39.) The Court held an evidentiary hearing on the Motion on November 20, 2019. (Dkt. No. 51.) At the conclusion of said hearing, the Court ordered the parties to file supplemental briefing directed to what steps Plaintiff WPEM, LLC ("WPEM") undertook in conducting its pre-suit investigation. (*Id.* at 82:7–83:19.) Having considered all that is before it, and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **GRANTED**. The Court finds that SOTI is entitled to and should be awarded reasonable attorneys' fees in the amount of $179,622.00.

## I. BACKGROUND

### A. Procedural History

On April 18, 2018, WPEM filed a complaint against SOTI alleging that SOTI's MobiControl Speed Lockdown (the "Accused Technology") infringes U.S. Patent No. 9,148,762 (the "Asserted Patent"). (Dkt. No. 1.) Specifically, WPEM alleged infringement based upon its review of a user manual for version 11 of the Accused Technology. (Dkt. No. 53-8 ¶ 9; *see also* Dkt. No. 1 ¶ 10.) In its Answer, filed July 9, 2018, SOTI asserted that the Asserted Patent is invalid in view of version 10 of the Accused Technology, which predates the Asserted Patent, among other

references. (Dkt. No. 10 ¶ 29.) Counsel for SOTI asserted this same position in correspondence to counsel for WPEM sent the same day. (Dkt. No. 39-16.)

On August 17, 2018, WPEM's counsel offered to settle its claims against SOTI for $429,000. (Dkt. No. 39-17.) SOTI's counsel reiterated its position that the Accused Technology was publicly available prior to the priority date of the Asserted Patent and therefore was invalidating prior art. (*Id.*)

On September 25, 2018, at WPEM's counsel's request, SOTI's counsel sent WPEM's counsel an executable version of version 10 of the Accused Technology. (Dkt. No. 39-19 at 2–3.) On October 16, 2018, WPEM's counsel demanded $150,000 to settle its claims against SOTI. (Dkt. No. 39-22 at 1.)

The following day, SOTI's counsel sent WPEM's counsel a Rule 11 letter asserting that WPEM had violated Rule 11 of the Federal Rules of Civil Procedure because a reasonable investigation would have revealed (1) that the Asserted Patent is invalid in light of the Accused Technology; (2) that the Asserted Patent is invalid in light of WPEM's own prior art: U.S. Patent Application No. 13/091,977, which published as U.S. Patent Publication No. 2011/0264246 (the "'246 Publication"); (3) that WPEM's inequitable conduct rendered the Asserted Patent unenforceable because WPEM did not disclose the '246 Publication to the U.S. Patent and Trademark Office ("PTO"); and (4) that the Asserted Patent was unenforceable because it failed to include an inventor: Tina Pantoja. (Dkt. No. 39-15.) SOTI gave WPEM ten days to dismiss the complaint before seeking Rule 11 sanctions. (*Id.* at 5.)

On October 24, 2018, WPEM offered to settle for $75,000. (Dkt. No. 39-24.) SOTI declined. (*Id.*) WPEM then offered to dismiss the claims with prejudice and grant a license in exchange for SOTI dismissing its counterclaims and not pursuing attorneys' fees.[1] (*Id.*)

On October 30, 2018, WPEM filed a motion to dismiss its claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). (Dkt. No. 28.) SOTI filed a response stating that it did not oppose dismissal but did not believe each party should bear its own costs and fees, as WPEM's motion requested. (Dkt. No. 30.) The Court dismissed WPEM's claims with prejudice and this Motion followed. (Dkt. No. 36; Dkt. No. 39.)

### B.    WPEM's Pre-Suit Investigation

Mr. William Taylor is the sole inventor listed on the Asserted Patent. (Dkt. No. 1-1.) Mr. Taylor and Ms. Tina Pantoja are the two owners of WPEM. (Dkt. No. 53-8 ¶ 2.) Mr. Taylor and Ms. Pantoja are also the sole co-owners of W2W, LLC, a predecessor entity. (*Id.*) Mr. Taylor and Ms. Pantoja first became aware of the Accused Technology in December 2017 by reviewing a user manual for version 11 of the Accused Technology that they discovered on the Internet. (*Id.* ¶ 3, 9.) According to Mr. Taylor, he was not then aware that there were other versions of the Accused Technology and did not see any other versions on SOTI's website. (*Id.* ¶ 9.) Mr. Taylor contacted counsel for WPEM[2] regarding his belief that the Accused Technology infringed the Asserted Patent, and beginning in February 2018, Mr. Taylor worked with counsel to create a claim chart

---

[1] The timestamps on the emails exchanged are incongruous, seemingly as a result of differing time zones. (Dkt. No. 39-24.) However, it appears that WPEM's offer to settle for $75,000 and its ultimate offer to dismiss its claims with prejudice for no payment appear to have been sent on the same day. (*Id.*)

[2] WPEM was created after Mr. Taylor contacted counsel and pursuant to counsel's advice for the purpose of holding the Asserted Patent. (Dkt. No. 53-8 ¶ 10.)

demonstrating infringement of the Asserted Patent based upon the user manual for version 11 of the Accused Technology. (*Id.*)

Other than attempting to establish clean title to the Asserted Patent in WPEM and developing claim charts for infringement, neither WPEM nor Mr. Taylor describe any other steps they took as part of a pre-suit investigation prior to filing WPEM's complaint on April 18, 2018. Neither WPEM nor Mr. Taylor establish or relate any efforts to conduct a prior art search or review SOTI's website, beyond the statement that "[Mr. Taylor] did not see any other versions [of the Accused Technology] on SOTI's website."[3] (*Id.*)

Mr. Taylor does assert that he was aware of SOTI during the relevant time period and had reason to believe that they did not possess the invention covered by the Asserted Patent in January 2013, when version 10 of the Accused Technology was released. Mr. Taylor believed this because in 2012, AT&T contracted with Mr. Taylor's company to add this functionality to a system that was provided by SOTI. (*Id.* ¶ 15.) Mr. Taylor continued to provide this functionality to the SOTI system until AT&T terminated its license agreement with Mr. Taylor in the third quarter of 2015. (*Id.* ¶ 19.)

## II.     LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "When a party seeks dismissal of an action under Rule 41(a)(2) unilaterally, rather than as part of a settlement, the opposing party is ordinar[ily] regarded as the prevailing party" because a dismissal with prejudice "has res judicata effects that result in a judicially sanctioned change in the legal relationship of the parties." *Trover Grp., Inc. v. Dedicated*

---

[3] Such a statement does not indicate what level of search Mr. Taylor may have conducted of SOTI's website or if he ever visited it at all.

*Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 4910875, at *1 (E.D. Tex. Aug. 17, 2015) (Bryson, J).

An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 554.

"[F]or example, . . . district courts [may] consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (citation omitted). Additional "factors relevant to the inquiry include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008). Similarly, "[i]f the patentee prolongs litigation in bad faith, an exceptional finding may be warranted." *Id*. "[E]vidence of the frivolity of the [party's] claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (citation omitted). A party's unreasonable conduct need not be independently sanctionable to warrant a finding of exceptionality. *Octane*, 572 U.S. at 555.

## III.    DISCUSSION

Though exceptional cases are by definition "rare," they do exist. *Id.* at 553–54. Reviewing the totality of the circumstances, the Court finds that this is such a case. Where, as here, a party unilaterally moves to dismiss its claims with prejudice, the opposing party is the prevailing party for attorneys' fees purposes. Moreover, it is "reasonably clear" that the Accused Technology is in

fact prior art, and thus if it is covered by the Asserted Patent, as WPEM contends, it *invalidates* rather than infringes the Asserted Patent. *See SFA Sys.*, 793 F.3d at 1348. The Court notes that it considers these issues as part of an "evaluation of the strength of [WPEM's] litigation position" and expresses no opinion on the ultimate merits of these issues. *Id.*

Additionally, and crucially, the Court finds that WPEM conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent. Even the most cursory of such investigations would have revealed the grounds for invalidity and unenforceability SOTI now asserts. Having failed to conduct a pre-filing investigation, the Court finds that WPEM has unreasonably subjected SOTI to the costs of litigation and should properly bear its attorneys' fees.

In reaching this conclusion the Court does not hold that a case is exceptional simply because a plaintiff is confronted with compelling evidence that its claims are without merit and dismisses the lawsuit at an early stage. Nor does the Court conclude that a case is exceptional where a plaintiff conducts a diligent pre-filing investigation but nonetheless misses compelling evidence that its claims are without merit. Nor does the Court offer any opinion on what level of pre-filing investigation is sufficiently "diligent." In this case, based upon WPEM's own evidence, it is clear that WPEM conducted *no* pre-filing investigation into the validity and enforceability of the Asserted Patent *at all*. Moreover, the glaring obstacles to the validity and enforceability of the Asserted Patent would have been obvious if WPEM had even conducted an adequate *infringement* investigation (such as by reviewing SOTI's website), explored its own owners' prior inventorship, or had reviewed its own actions in preparation for this litigation. In other words, this case stands out from a patent suit in which deficiencies in the claims are discovered at an early stage, despite a diligent pre-filing investigation, and the claims are promptly dismissed.

### A. SOTI is the prevailing party.

"When a party seeks dismissal of an action under Rule 41(a)(2) unilaterally, rather than as part of a settlement, the opposing party is ordinary regarded as the prevailing party for purposes of an award of costs." *Trover*, 2015 WL 4910875, at *1 (collecting cases). "The dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004). Such "enforceable judgments on the merits . . . create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (citations omitted). Accordingly, where WPEM has "unilaterally moved to dismiss their claims with prejudice under [Rule] 41(a)(2) . . . [SOTI] must be regarded as the prevailing party in this action for purposes of [SOTI's] request for an award of costs and attorney fees." *Trover*, 2015 WL 4910875, at *1.

### B. It is reasonably clear that WPEM's litigation position was frivolous.

In considering the first portion of the *Octane* analysis, the "substantive strength of a party's litigating position," *Octane*, 572 U.S. at 554, "for a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a 'mini-trial' on the merits for attorneys' fees purposes," *Trover*, 2015 WL 4910875, at *3. While such frivolity is not clear for many of SOTI asserted grounds of invalidity and unenforceability, it is clear that WPEM's claims were frivolous in light of the fact that the Accused Technology is in fact prior art.

However, the Court notes that many of SOTI's other asserted grounds, even if not clearly frivolous, were nonetheless so blatantly apparent that WPEM's ignorance of them prior to filing this lawsuit properly bears on the second portion of the *Octane* analysis, "the unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554.

### 1. It is reasonably clear that the Accused Technology is in fact prior art.

SOTI asserts and WPEM does not dispute that the functionality accused of infringement in version 11 of the Accused Technology was also present in version 10 of the Accused Technology, which was publicly available as early as January 7, 2013. (Dkt. No. 51 at 15:4–13.) Accordingly, if WPEM prevailed on its assertion that the Accused Technology is covered by the Asserted Patent, it would have had the effect of invalidating, rather than infringing, the Asserted Patent. Indeed, it is a long-held maxim of patent law: "That which infringes, if later, would anticipate, if earlier." *Peters v. Active Mfg. Co.*, 21 F. 319, 321 (C.C.S.D. Ohio 1884), *aff'd*, 129 U.S. 530 (1889).

WPEM asserts that SOTI has failed to show that the Accused Technology is in fact prior art because SOTI has failed to "conclusively prove" the Asserted Patent's priority date because "[p]riority goes to the first party to reduce an invention to practice." (Dkt. No. 41 at 5.) This appears to be an argument that WPEM would have attempted to "swear behind" the Accused Technology as prior art under § 102(a) of the Pre-AIA Patent Act. However, both the Asserted Patent and the patent application to which it claims priority were filed after the America Invents Act came into effect. (Dkt. No. 1-1.) Thus, this avenue of avoiding prior art is unavailable to WPEM.

Next, WPEM argues that "the Asserted Patent is entitled to the benefit of an earlier patent application filing date (specifically of May 13, 2013)." (Dkt. No. 41 at 9.) This assertion, in addition to being factually incorrect (the Asserted Patent claims a priority date of May 3, 2013), actually reinforces SOTI's contention that version 10 of the Accused Technology, released five months earlier in January 2013, is invalidating prior art.[4] (Dkt. No. 1-1.)

---

[4] The Court notes that WPEM's Response to the Motion contains approximately 30 typographical errors. (Dkt. No. 41.) While typographical errors are certainly not grounds for an award of attorneys' fees, when they are this pervasive, they reflect the same serious lack of care with which WPEM has prosecuted this case.

Finally, the Court notes, despite WPEM's repeated assertion that SOTI must prove issues related to invalidity and enforceability "conclusively," the Court reviews these issues not as a conclusive determination on the merits but "with respect to the substantive strength of a party's litigating position." *Octane*, 572 U.S. at 554.

### 2. Determining invalidity or unenforceability based upon SOTI's other grounds would require a "mini-trial" on the merits.

Unlike, anticipation by the Accused Technology, where proof of WPEM's claims of "infringement" would have actually yielded proof of invalidity as a matter of law, "the frivolity of [WPEM's] claims" in view of SOTI's other grounds of invalidity and unenforceability are not "reasonably clear" without conducting "a 'mini-trial' on the merits." *SFA Sys.*, 793 F.3d at 1348. On the merits, SOTI would face the heavy burden of proving by clear and convincing evidence that the Asserted Patent is invalid as anticipated or unenforceable due to inequitable conduct. The Court declines to engage in the sort of hypothetical fact-finding that would be required to determine these issues, particularly where other circumstances clearly demonstrate the exceptionality of this case.

With regard to SOTI's assertion that the '246 Publication anticipates the Asserted Patent, the Asserted Patent itself discloses that "[s]ome of the features in the ['246 Publication] have been improved and/or modified in the present application." (Dkt. No. 1-1 at 17:9–10.) If that is true, and those improvements are reflected in the claims of the Asserted Patent, then the Asserted Patent may well be not invalid in view of the '246 Publication. A finding of invalidity would require a fact-finder to conclude by clear and convincing evidence that each and every element of every claim of the Asserted Patent was anticipated or obvious in view of the '246 Publication.

Similarly, a finding that the Asserted Patent was unenforceable due to incorrect inventorship, as SOTI asserts, would require a finding that Ms. Pantoja, who claimed in a

declaration to be an inventor of the patent (Dkt. No. 39-14), was in fact an inventor and that she was excluded with an intent to deceive the PTO. *See* 35 U.S.C. § 256. Such a finding would likewise have to be made by clear and convincing evidence. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998.)

Moreover, the Court does not find it reasonably clear that WPEM engaged in inequitable conduct before the PTO by not disclosing the '246 Publication in the prosecution of the Asserted Patent, as SOTI asserts. (*See* Dkt. No. 39 at 5.) The '246 Publication is disclosed and discussed in the specification of the Asserted Patent. (Dkt. No. 1-1 at 17:5–10.) The Federal Circuit has repeatedly noted that disclosure in the specification demonstrates a lack of intent to deceive, a necessary element of inequitable conduct. *See, e.g.*, *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.3d 819, 823–24 (Fed. Cir. 1988); *Bayer AG v. Housey Pharm., Inc.*, 128 F. App'x 767, 770 (Fed. Cir. 2005). Thus, such disclosure makes it unlikely that the Court would have found inequitable conduct on these grounds on the merits, though—again—there is no need to reach the merits of that issue.

### C. WPEM conducted no pre-filing investigation into the validity and enforceability of the Asserted Patent.

In considering "the unreasonable manner in which the case was litigated," *Octane*, 572 U.S. at 554, courts may look to the plaintiff's "pre-filing investigation," among other factors. *Comput. Docking*, 519 F.3d at 1379. Here, the evidentiary record reflects that WPEM conducted no pre-filing investigation at all into the validity and enforceability of the Asserted Patent at all. Moreover, while the Court does not reach a conclusion on the level of frivolity of several of SOTI's asserted grounds for invalidity or unenforceability, each of these issues are significant enough that they should have been of note to WPEM and would have been readily discovered with a bare minimum of diligence.

With regard to version 10 of the Accused Technology, which demonstrates that the Accused Technology is actually prior art, WPEM asserts it was unaware of this version of the software until it was raised to its attention by SOTI. (Dkt. No. 53 at 6.) However, a reasonable plaintiff conducting even a minimally diligent *infringement* investigation would have at least reviewed the would-be-defendants' website to determine whether there were other products to accuse of infringement. Had WPEM done so, it would have discovered version 10 of the Accused Technology.

Moreover, the user manual upon which WPEM relied to develop its infringement case provides a clear indication that there are other versions of the Accused Technology. A page of the user manual contains a large red box titled "IMPORTANT: - PLEASE READ BEFORE UPGRADE" and directs readers to a URL link "for important notes for the latest version of MobiControl." (*See* Dkt. No. 1 ¶ 10; Dkt. No. 54-1 ¶ 8.) That language alone gives clear notice of the existence other versions of the Accused Technology. Had WPEM followed that link, it would have discovered that version 10 of the Accused Technology was released on January 7, 2013. (Dkt. No. 54-1 ¶ 9.) WPEM could easily have done so. It is hard to square this failure with the obligation to conduct a diligent pre-filing investigation.

Mr. Taylor asserts that he had a good faith belief that the Accused Technology did not practice the invention disclosed in the Asserted Patent in January 2013. (Dkt. No. 53-8 ¶ 15–19.) However, an inventor's knowledge of the relevant market is not a substitute for conducting an adequate pre-filing investigation. Moreover, there is no evidence that Mr. Taylor communicated this information to WPEM's counsel or anyone else, as part of a pre-filing investigation or otherwise, prior to the filing of WPEM's complaint.

Additionally, a review by WPEM's counsel of Mr. Taylor and Ms. Pantoja's prior works would have alerted WPEM to the likelihood that the '246 Publication might be invalidating prior art. The '246 Publication lists Mr. Taylor and Ms. Pantoja as its co-inventors and was assigned to W2W LLC, a predecessor entity to WPEM that is also owned by Mr. Taylor and Ms. Pantoja. (Dkt. No. 39-3; Dkt. No. 53-8 ¶ 2.) However, there is no indication that WPEM reviewed *any* potential prior art prior to filing this suit, not even its own co-owner's prior works.

Finally, not only did WPEM fail to consider the potential impact of Ms. Pantoja's assertion of inventorship of the Asserted Patent, it appears that this problem may have been affirmatively *created* by WPEM's counsel. The document in which Ms. Pantoja declares under penalty of perjury that she is an inventor of the Asserted Patent is an assignment assigning her rights in the Asserted Patent to WPEM. (Dkt. No. 39-14.) This assignment, executed two days before WPEM brought suit, appears to be part of the effort undertaken at counsel's advice to "ensure clean title" of the Asserted Patent in WPEM. (Dkt. No. 53-8 ¶ 10.)

In sum, the Court finds that WPEM wholly failed to conduct an invalidity and enforceability pre-filing investigation and ignored obvious issues that should have been readily apparent to it had it adequately them as part of its own preparation for litigation. WPEM's failures cause this case to stand out from an ordinary case and warrant a fee recovery by SOTI.

Notwithstanding its pre-suit failures, the Court finds nothing exceptional about WPEM's post-filing conduct. WPEM voluntarily moved to dismiss its claims one week after SOTI served its invalidity contentions in this case. (*See* Dkt. No. 26 at 3; Dkt. No. 28.) While there was email traffic between the parties in which SOTI asserted its grounds for invalidity and unenforceability and WPEM responded with progressively lower settlement demands, the Court does not find in

these communications an attempt to "prolong[] litigation in bad faith" to extract the nuisance value of the lawsuit. *Comput. Docking*, 519 F.3d at 1379.

Further, the Court does not expect that patentees will uncover every potential obstacle to the assertion of their patents prior to filing a patent infringement suit. No pre-filing investigation is perfect. Diligence is far different than perfection. However, WPEM's failure to conduct *any* pre-filing investigation into the invalidity and enforceability of the Asserted Patent is not excusable and, coupled with the other circumstances discussed herein, renders this case exceptional.

**D.     WPEM is entitled to reasonable attorneys' fees.**

In exceptional patent cases, the court may award the prevailing party "reasonable attorney fees." 35 U.S.C. § 285. "In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, inter alia, the billing rate charged and the number of hours expended." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983); *accord In re Electro-Mech. Indus.*, 359 F. App'x 160, 165 (Fed. Cir. 2009). "The amount of the award is assessed at the discretion of the district court." *Lam*, 718 F.2d at 1068.

In reviewing the record before the Court, the Court finds that the billing rates charged were reasonable. (Dkt. No. 49-7 at 2; *see also, e.g.*, Dkt. No. 51 at 68:12–22) Additionally, the Court finds that the amount of hours expended defending the lawsuit through to its voluntary dismissal were reasonable. However, the Court finds that the amount of hours expended, and thus fees incurred, opposing such voluntary dismissal and seeking attorneys' fees were not reasonable or warranted.

The invoices proffered by SOTI reflect that it incurred $134,716.50 in attorneys' fees in this lawsuit up to October 31, 2018, the day after WPEM filed its motion to dismiss.[5] (Dkt. No. 49-6 at 1–22; *see also* Dkt. No. 28.) However, after that, SOTI incurred another $133,488.00 in attorneys' fees opposing the portion of WPEM's motion to dismiss that asked for each side to bear its own costs and fees and arguing for recovery of its own fees under § 285. (Dkt. No. 49-6 at 23–56; *see also* Dkt. No. 30; Dkt No. 39.) The Court understands that, in pursuing a § 285 recovery, parties will inevitably incur additional attorneys' fees. However, in this case a near doubling of the amount already incurred in fees is simply unreasonable. At some point, a party must be mindful of the use and conservation of judicial and party resources and cannot (after it realizes it will prevail) continue to incur fees far in excess of any proportional relationship to the fees incurred in the merits portion of the case.

With this view and in light of the fees incurred in the merits portion of the case, the Court finds that a reasonable amount of fees incurred after October 31, 2018, is $44,905.50. This sum represents one-third of the amount SOTI had been billed for work, on the merits, up until the time WPEM moved for dismissal. In exercising its discretion, this, in the Courts view, represents a reasonable and proportional additional amount of fees for SOTI to recover beyond its merits defense.

The Court finds that the total fees incurred by SOTI up to October 31, 2018, a sum of $134,716.50, are reasonable and that an additional amount of $44,905.00 for time spent after October 31, 2018, is reasonable. Accordingly, the Court awards SOTI a total sum of $179,622.00 in attorneys' fees pursuant to § 285.

---

[5] By this date, October 31, 2018, SOTI was aware that WPEM had abandoned its case on the merits and sought dismissal. Said another way, this is the date by which SOTI was aware that its merits defense was successful. (*See* Dkt. 49-6 at 21 (time billed on October 31, 2018 for "[c]orrespondence and conference regarding motion to dismiss and response strategy"); *id.* at 24 (time billed on November 1, 2018 for "[r]eview case law regarding fees motion.").)

## IV.    CONCLUSION

For the reasons set forth herein, SOTI's Motion to Recover Attorneys' Fees Pursuant to 35 U.S.C. § 285 (Dkt. No. 39) is **GRANTED**. The Court awards SOTI attorneys' fees in the total amount of $179,622.00, which shall be due and payable in full by WPEM within 30 days from the issuance of this Order.

**So ORDERED and SIGNED this 4th day of February, 2020.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE